(28 App. Div. 379.)

## WELDE v. NEW YORK & H. R. CO. et al.

(Supreme Court, Appellate Division, First Department.   April 22, 1898.)

1. EMINENT DOMAIN—VIADUCT—LIABILITY OF RAILROAD.
  In an action by an owner of abutting property for an injunction and damages against certain railroad companies, in respect to the maintenance of a viaduct through Park avenue, it appeared that the viaduct was a part of the work of raising the grade of the Harlem Railroad, as provided for by Laws 1892, c. 339, and had been planned by the board of improvement created by the act, who also contracted for its erection, and had entire control of the work to the time of the trial. *Held*, that the defendant companies, in the absence of a delivery to them of the completed structure, and their adoption and use of it, were not responsible so far as the building of the viaduct was concerned.

2. SAME—TEMPORARY STRUCTURES.
  It also appeared in respect to certain temporary structures that they were erected along the sides of the street under the authority of the board, without any interference of defendants, solely to enable the contractors to put up the viaduct.   *Held*, that the defendants were not liable for their presence or for consequential injuries.

3. SAME.
  *Held*, further, that no damages could, in any event, be allowed in respect to one of plaintiff's houses, which stood on a side street, had no frontage on the avenue, and whose light, air, and access were not obstructed.

4. SAME—CONVEYANCE TO RAILROAD—CONSTRUCTION.
  A former owner of the land afterwards occupied by the avenue had conveyed to the railroad a strip along the middle thereof, 24 feet wide, with the power of sloping embankments or excavations beyond the lines so far as necessary to support their work.   *Held*, without deciding what rights were thus given to the company as against the abutters, that the deed was not broad enough to cover the erection of the steel viaduct.

  Ingraham, J., dissenting.

Appeal from special term.

Action by Charles Welde against the New York & Harlem Railroad Company and others.   From a judgment for plaintiff, defendants appeal.   Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Ira A. Place, for appellants.
Thomas P. Wickes, for respondent.

RUMSEY, J.   In the year 1831 the New York & Harlem Railroad Company was chartered, with power to build a railroad, commencing at 23d street, in the city of New York, and extending northerly.   Before that time, and pursuant to the law of 1807, as amended in 1813, 4th avenue had been laid out on Manhattan Island, as one of the streets of the city of New York, although it was not opened as a street for many years afterwards.   As located and built, the track of the Harlem Railroad extended along 4th avenue, occupying a space of about 24 feet wide in the center of the street.   At that time, and for many years afterwards, the tracks of the road lay upon the surface of the ground, in front of land now owned by the plaintiff.   That part of 4th avenue, which was afterwards called, and is now known, as "Park Avenue," was opened as a street in 1862, from 34th street up to 135th street. Before that time the width of the avenue had been increased from 100

feet to 140 feet, by adding 20 feet from the land on each side of the street.    The plaintiff is the owner of land situated on the corner of 124th street and 4th avenue, having a frontage upon both streets.    At the time that the Harlem Railroad was built, the land was owned by one Isaac Adriance, who conveyed to the New York & Harlem Railroad Company a strip of land 24 feet wide, along the center of the street, for the purpose of its railroad, by a deed granting also certain easements, which will be considered later in this opinion.    In 1872 the Harlem Railroad Company was required and authorized by the legislature to lay its tracks in a cut along the center of Park avenue, which it proceeded to do.    When the cut was finished in front of the plaintiff's land, it was so deep that the smoke pipes of the locomotives were below the top of the cut; and the smoke and steam escaping from the engines did not seriously inconvenience those persons who occupied buildings along the sides of the street.    The road continued to be operated in this cut until the trial of this action, but in the year 1892, by a statute known as chapter 339 of the laws of that year, the legislature established a new grade for the tracks of the New York & Harlem Railroad Company, and required the elevation of the road to that grade.    Such grade ran considerably above the surface of the street, and the statute provided that there should be erected above the street, to carry the tracks, a steel viaduct, the height of which was practically fixed by the legislature.    The construction of these elevated tracks, pursuant to this statute, was begun during the year 1893, and continued until the time of the trial of this action.    At that time the greater portion of the appellant's trains, if not all of them, were yet running in the cut which had been built in 1872, because the viaduct was not yet so far finished as to enable them to be run over it.    Certain engines, however, and cars, were operated along the viaduct, by those who were engaged in its construction; but whether those engines and cars were operated by the defendants or by the contractor did not clearly appear, and perhaps is not very important at present.

The New York Central & Hudson River Railroad Company is the lessee of the New York & Harlem Railroad, and has for a long time been operating, and still is operating, that road, under a lease from its owner.    The allegations of the complaint are substantially that these two railroad companies are now constructing, and have in part constructed, an elevated viaduct on Park avenue, opposite the premises of the plaintiff, about 14 feet above the level of the street, which structure consists of iron columns, upon which are placed horizontal and longitudinal girders and bases, and upon them is to be laid a double-track steel railroad, upon which the defendant companies intend to run their railroad trains at high speed and at frequent intervals.    It is further alleged that the said companies are likewise constructing, on both sides of the viaduct, station houses, resting upon girders, which are sustained by columns erected along the curb lines of Park avenue, between 123d and 127th streets, of said city.    The complaint describes these station houses and structures at considerable length, and alleges that, in the operation of the trains, there will be emitted noxious vapors, gases, and cinders, and loud and disagreeable noises will be caused, and that the structure itself will shut off the light and air

from the windows of the plaintiff's houses on Park avenue, making the rooms of the buildings dark and undesirable, and impairing the value of the premises.

The plaintiff complains that, during the progress of the work, the tenants were seriously incommoded by the noise caused by handling the iron on the street, and on the viaduct as it was building, and also by smoke and steam from the engines used in the construction of the viaduct, and by the interruption of the light, caused by that structure as it grew towards completion, and also by the smoke and steam escaping from the engines of the defendants, as they were operated in the cut, which, instead of going straight up into the air, as it had formerly done, was turned aside by the viaduct and the temporary structure erected above the street, against and into the buildings, to the great annoyance and discomfort of the tenants. The complaint then contained an allegation that, by reason of all these facts, the plaintiff had been damaged, in loss of rentals, and the destruction of his easements of light, air, and access in the public street, to the extent of $7,000 per annum. The complaint contains further allegations to the effect that by reason of the wrongful and unlawful acts and trespasses of the defendants, as aforesaid, prior to the commencement of this action, causing injury to and destruction of his easements of light, air, and access to his said premises, the plaintiff has sustained special damages to the sum of $20,000. The relief asked is the usual injunction, restraining the defendant railroads from maintaining their elevated structure, and for damages.

The allegations of the plaintiff were put in issue, and the questions presented were, in the first place, whether the structure complained of was erected by the railroad companies or operated by them, and the extent and nature of their liability; and, if that should be found, then, of course, the question as to the amount of damages sustained by the plaintiff, by reason of the construction and operation, and the damage to the lands themselves, from the same cause. While not disputing seriously that the alleged inconveniences resulted from the work as it progressed, the defendants insist that they are not liable for them, because the contractors who were performing the work were not acting by their direction or under their control, but were acting solely under the authority and the procurement of a board of improvement created by the legislature, and over whose actions the defendant railroad companies had no control. Whether this contention is well founded, and the extent to which it operated as a defense to this action at this time, are the serious questions presented by the case.

This viaduct was a part of the work of raising the grade of the Harlem Railroad along Park avenue, in the city of New York, to and beyond the Harlem river, as provided for by chapter 339 of the Laws of 1892. The provisions of that statute have already been considered by us, in the case of Taylor v. Railroad Co., 50 N. Y. Supp. 697, which was an action brought for substantially the same relief as that sought to be obtained here. In that case the authority by which this work was undertaken, and the relation which the railroad companies bore to it, from time to time, were

considered and determined; and the principles established in that case, so far as they are applicable, must control us in the determination of this appeal. It appeared in that case, as here, that the board of improvement, created by chapter 339 of the Laws of 1892, planned the structure which was building in front of the plaintiff's premises, made the contracts for its erection, and had entire and complete control of the work, down, at least, to the time of the trial of the action. It was decided in the Taylor Case that the work thus begun and continued was not that of the railroad company, and was nothing for which they were responsible; but they had no connection with it, legally or otherwise, in such a way as to be able to control it, or to prevent it, or to be responsible for it, at least until the structure, when finished, had been delivered over to them; and that, after that time, they would only be liable, if at all, by reason of their adoption of the work, and using it for the purposes for which it was intended. Those principles apply to the same extent and with full force to the facts shown in this case, so far as the building of the viaduct was concerned. There is no claim here that the railroad companies, apart from the board of improvement, undertook any portion of this work, except that they began to build a station opposite the plaintiff's premises; but it was insisted by plaintiff that they actually undertook that work, and he claims that, by that act, they thereby became wrongdoers, and caused him damage which they should pay. It appears that the contract to do this work was let by the board of improvement to various persons, and there is evidence that these persons were the only ones who were engaged upon it. But it was claimed by the plaintiff that the railroad companies, in pursuance of the authority given to them by section 7 of the statute, had exercised their election to erect a station house on 125th street, and had begun the erection of that station at 124th street, opposite the plaintiff's premises. The plaintiff insisted that the erecting of a station opposite his premises was not permitted by the act, and that it was the source of much of the damage of which he complained.

It was conceded practically by the defendants that they had no authority by the act, as amended, to erect a station opposite the plaintiff's premises. As section 7 was originally passed, it authorized a station to be built extending from the north side of 124th street to the south line of 126th street, but that section was subsequently amended in 1894 so as to require the station to be built between 125th and 126th streets. It appeared that some work had been done on 124th street by way of making the entrance to the station, and the posts to sustain the viaduct in front of the plaintiff's premises were set at the curb on Park avenue, so as to afford sufficient width for the erection of the station, which the act originally permitted to be built there. It may be that, so far as this work had been done by the defendant railroad companies, they would be liable for it. That all of it was done by them was strenuously denied. It appeared that they had let the contract for building the station to a particular firm, and that the board of

improvement had also made a contract with a different firm, to build that portion of the structure to be used as a station which they (defendants) undertook to construct. The defendants proposed to show that no work had been done upon that viaduct by their contractor or under their direction, but that all the work which was done was done by the contractor of the board, and under their direction and pursuant to the plans of the board. This evidence, if admitted, would have shown that the defendants were not responsible for the work that was done, and also that, if the contractor was guilty of any illegal act in his manner of doing the work, it was not a thing for which the defendants were liable; and, upon that being made to appear, it is quite likely that the award of damages would have been materially diminished. The defendants therefore should have been permitted to make that proof.

It appeared also in the case that there had been erected on each side of the street a temporary structure, built by the contractors under the direction of the board of improvement, and that this structure, while it stood, seriously interfered with the easements of light, air, and access enjoyed by the tenants of the plaintiff. The plaintiff claims from defendants damages for the interference with his easements, caused by these temporary structures. It appears, however, and is not disputed, that these structures were erected along the sides of the street under the authority of the board of improvement, without any interference or control of the defendants, solely to enable the contractors to put up the viaduct which they were employed to do. The putting up of the viaduct, as we have seen, was a work for a public purpose in the public street, which it was within the power of the legislature to direct to be done. The doing of this work necessarily involved the obstruction of the street while it was in progress, and more or less noise and discomfort and inconvenience to the abutters, as the necessary accompaniment of such an improvement. These injuries, however, were only temporary in their nature; and, if the board might lawfully erect the structure, the abutter was not entitled to recover for these consequential injuries, which were not permanent, and which necessarily accompanied the doing of the work. Atwater v. Trustees, 124 N. Y. 602, 27 N. E. 385; Benner v. Dredging Co., 134 N. Y. 156, 31 N. E. 328. If the contractors, in doing this work, were guilty of any illegal act, the remedy of the plaintiff was against them, and the board of improvement, who let the contract to them, would not be liable for anything done by the contractors, unless it was an illegal act necessarily accompanying the work which the contractors were hired to do. Goldschmid v. Mayor, 14 App. Div. 135, 43 N. Y. Supp. 447. But in no event could the railroad companies be liable for the act of this contractor, unless they authorized his work or in some way undertook to control it.

The learned trial justice awarded to the plaintiff damages for the loss of rents during the construction of the viaduct. These buildings were not rendered untenantable during that period because of the operation of the railroad in the usual way. It is conceded

that during that time the trains of the defendants ran in the cut, and the inconvenience and discomfort was caused by the noise necessarily incident to the building of the viaduct, or which accompanied it, although it may not have been necessary, and to the obstruction of light and air caused by the temporary erection, so that it could be built. These elements of damage ought not to have been included in his award.

One building of the plaintiff was situated upon 124th street, and had no frontage whatever upon Park avenue. The plaintiff gave considerable evidence as to the damage to that building, and it must be assumed, in view of that testimony, that the evidence entered into the award, if not for rental damages, at least into the award of fee damages given to the plaintiff. It has already been decided that, in cases of this kind, damages are not to be awarded in respect of a building which is situated upon a different street, and whose light, air, and access are not obstructed. Keene v. Railway Co., 79 Hun, 451, 29 N. Y. Supp. 971.

As has already been stated, one Isaac Adriance was the owner of these lands at the time the railroad was originally built along Park avenue, and he conveyed to the railroad 24 feet in width along the center of the avenue to construct their railroad, and for any other purpose, with the power of sloping their embankments or excavations so much further beyond the lines of said premises as may be necessary to support their work, not, however, extending beyond the width of the avenue. It is claimed by the defendants that the necessary effect of this grant is to give to the railroad company the right to occupy the whole avenue so far as the abutters are concerned, without any liability to recompense them for interference with their right to use the street. In this contention we do not agree. The deed from Adriance undoubtedly gave to the railroad company, as far as he was concerned, the right to dig an excavation through the street, if it should be necessary to lay the tracks in a cut, of such a width as might be necessary to enable the companies to lay their tracks, and to build such an embankment as might be necessary for the same purpose, and to occupy for that purpose the whole width of the street, if it should be necessary to do so. But the embankment or the excavation, however much it might interfere with the use of the street by Adriance, would certainly not interfere with his light or air, as would a viaduct such as has been constructed along that street. It is quite clear, therefore, that, by the terms of the deed, no viaduct was intended nor could be constructed. It is not necessary for us to say at this time what rights are given to the railroad company, as against these abutters, by the terms of Adriance's deed. All that we need to say here is that the deed is not broad enough to cover the erection of a viaduct such as this.

Several other questions are raised by the defendants, none of which are necessary to be considered upon this appeal. For the errors indicated in this opinion, however, the judgment must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur, except INGRAHAM, J., dissenting.

INGRAHAM, J. (dissenting). I cannot concur in the opinion of Mr. Justice RUMSEY upon the question of the liability of the defendant railroad companies for the construction of the elevated structure upon which the tracks of the Harlem Railroad Company are placed. The act under which this structure was erected (chapter 339 of the Laws of 1892) had for its sole object the erection of a railroad structure for the use of the defendant railroad corporations. Prior to the year 1872 the New York & Harlem Railroad Company was operating a railroad upon 4th avenue, in the city of New York, in front of the premises in question. That company had existed for upward of 30 years, operating a railroad consisting of two tracks, and crossing the Harlem river at the upper end of 4th avenue. The railroad was then neither elevated nor depressed, but the tracks were laid upon the surface of the avenue. Under the act of 1872, the tracks of the railroad company were depressed, a cut being made, which was bounded by walls of masonry, and crossed by bridges at the intersecting streets. The road, as thus depressed, was entirely below the surface of the avenue, leaving room on both sides of the cut for a roadway, and the trains, in passing, were entirely concealed from the surface of the street; and this roadbed was under the exclusive control of the defendant railroad corporation. No individual or corporation was allowed to use the tracks or the roadbed, except with the consent of the defendant corporation. In 1890 an act was passed by congress which provided for the improvement of the Harlem river, and directing the secretary of war to cause the low bridges now crossing said Harlem river to be replaced by other bridges, at the expense of the owners thereof, as soon as the necessary legislation, if any such legislation be necessary, shall have enabled the change in grade to the approaches of said bridges thus required to be made. Chapter 907 of the act of 1890, approved September 19, 1890. By this act, the bridge of the defendant railroad companies crossing the Harlem river was required to be replaced by a bridge at a higher elevation—the underside of such new bridge to be at least 24 feet above the high water of springtide, and such bridge to be, under the provisions of the act of congress, erected at the expense of the owners thereof. To allow this change of grade to be made, so that this new bridge could be used by the railroad companies when constructed, the legislature of the state of New York passed an act known as "Chapter 339 of the Laws of 1892." The title of that act indicates that it was to provide for the elevation of the said railroad structure for changing the grade of said railroad, so that the railroad company could construct a new railroad bridge at an elevation over the Harlem river called for by the act of congress. By section 1 of the act it was provided:

"The grade of the New York & Harlem Railroad between One Hundred and Sixth street and the Harlem river, as now established by chapter 702 of the Laws of Eighteen Hundred and Seventy-Two, shall be changed and altered as follows."

The grade as altered by this section required that the tracks of the railroad company should be elevated above the level of the

street in front of the plaintiff's premises about 14 feet, and the tracks were to be supported by a viaduct structure of iron or steel. Section 4. These railroad tracks were to be carried on a solid, tight floor. Section 6. By section 7 of the act, the New York & Harlem Railroad Company, or its lessee, the New York Central & Hudson River Railroad Company, was authorized and permitted to erect station houses on both sides of the railroad at 125th street, with platforms extending from the north line of 124th street to the south line of 126th street. By section 13 of the act it was provided that:

"There shall be a board whose duty it shall be to execute, direct and superintend the construction of the said improvement from One Hundred and Sixth street to the line of the Harlem river. * * * The said board is hereby authorized and directed to take the entire charge and control of the said improvement from One Hundred and Sixth street to the line of the Harlem river, * * * and to execute the same in conformity with the provisions of this act, in a substantial and workmanlike manner. Such work shall be done, so far as possible, by contract. * * * The said board shall prepare plans of said improvement in conformity with this act."

By section 14 of the act it is provided that:

"When the said plan, specification and estimate shall be made and filed as aforesaid, the expense and cost of said improvement shall be borne and paid by the New York and Harlem Railroad Company, or its lessee, the New York Central and Hudson River Railroad Company, and the mayor, aldermen and commonalty of the city of New York, in equal proportions as the construction of the said improvement progresses. When and as often as it shall appear by the certificate of the superintending engineer of the work of the said improvement, duly certified by the aforesaid board, that the sum of twenty-five thousand dollars has been expended thereon by either of the said railroad companies, specifying the portions and divisions of the said improvement where the said expenditure has been made, the comptroller of the city of New York shall draw his warrant upon the treasury of the said city in favor of the treasurer of the said railroad company bearing and paying said expense, for one-half of the said sum, which shall be duly signed and countersigned by the proper officers of said city, upon whom by law is devolved the duty of signing and countersigning warrants, and deliver it to the said railroad company for and on account of the one-half of the expense and cost of the said improvement to be borne and paid by the city as aforesaid; but in no event shall the proportion of the cost of said improvement to be paid by the city of New York exceed the sum of seven hundred and fifty thousand dollars, and if the cost of said improvement shall exceed the sum of one million five hundred thousand dollars, then the entire excess over and above such sum shall be borne and paid by the New York and Harlem Railroad Company, or its lessee the New York Central & Hudson River Railroad Company."

By section 24 of the act it is provided that:

"Said improved structure and bridge shall be exclusively for the uses and purposes of the railroad company, and it shall not be lawful for any person or persons, other than a public officer in the execution of his duty as such, with his agents or assistants, to enter or pass upon or through the same or any portion thereof, on foot or in any other way than in the proper cars of such corporation provided for that purpose, without the consent of said corporation."

By section 25 of the act it is provided that:

"The cost of the construction of all stations upon said railway, whether provided for in this act or not, shall be borne by the said railroad corporations, or either of them."

And by section 26 of the act it is provided that:

"Said board shall begin the said improvement and proceed to the completion thereof with reasonable expedition. When completed, the New York & Harlem

Railroad Company and its lessee, the New York Central & Hudson River Railroad Company, so long as it remains such lessee, are authorized and directed to run by steam their trains and such trains of other railroad companies as shall have obtained permission therefor voluntarily given by either one of said companies which may be operating said railroad, over the said improvement and the route of the said railroad, and in and upon the depot at Forty-Second street, and the switches, turnouts and sidings now authorized by law north of said street; and no trains of other companies, without such permission, shall be run thereon."

This act of 1892 is amended by chapter 548 of the Laws of 1894, by which provision was made for the amended plans and specifications, and for one-half of the cost and expenses as may be necessary by such amended plans and specifications, and the city of New York was to be liable to the extent of $50,000.

It is entirely apparent that the sole object of this act was to provide for a change of the grade of the defendants' railroad to enable it to cross the Harlem river as required by the act of congress before cited; and the legislature imposed upon the city of New York the burden of paying a portion of the expense of the structure erected entirely for the benefit of the said railroad companies, which was to be exclusively within their possession, and upon which they alone were authorized to operate a railroad. The structure when completed was to be the property of the railroad. It was to be paid for in the first instance by the railroad, and officers were appointed to superintend its construction for the benefit of the railroad. The city of New York had no control over the maintenance of this new structure; and, while the commissioners appointed by the legislature to superintend the construction were designated by the mayor of the city of New York, they received their authority to act from the legislature, under the provisions of the act before cited, and their acts in building this structure were not the acts of the municipality of the city of New York. The situation is that the legislature had directed a change in the grade of the defendants' railroad; had authorized the construction of an elevated railroad structure to carry that change into effect; had itself designated persons who were to make the contracts for such change of grade for the railroad companies; had vested in the railroad companies the structure when completed with the exclusive right to use it; required the railroad companies to pay the cost of such construction and the cost of maintaining it after its completion.

The erection of this structure, and its maintenance after it was erected, were a trespass upon the plaintiff's easement and property in the avenue over which the structure was erected. This action was brought to restrain that trespass, and to recover damages caused by the trespass down to the time of the trial. Were the railroad companies liable for damages sustained by such trespass, and were they proper and necessary parties to an action to restrain a continuance of the trespass? It seems to me clear that this question must be answered in the affirmative. It is not disputed that the railroad companies, from the beginning, took part in the erection of this elevated structure. They paid the amounts required to be paid by the contracts made by the commissioners ap-

pointed to carry out the provisions of this statute. They caused to be erected, and paid for, the temporary structures necessary for the use of the railroad during the erection of the permanent structure provided for by the act. Their acts show conclusively that they accepted the provisions of this act as made entirely for their benefit, to enable them to continue to operate their roads, and to remove the bridge that they had used over the Harlem river, as provided for by the act of congress; and this, when the sole object of the passage of the act and of the action of these commissioners was to provide a structure for the use of the railroad companies which they were to use exclusively, and when it is alleged and nowhere disputed that it was the intention of the railroad companies, having paid the money necessary for the construction of the elevated railroad tracks, to enter into possession and use it exclusively as soon as completed. The plaintiff was entitled to commence and maintain an action to enjoin the trespass when one was contemplated, and to enjoin its continuance after the trespass was an accomplished fact. He had the right in such an action to an injunction restraining such a continuance by all those who were concerned in the trespass, or who contemplated continuing or maintaining the trespass; and in such an action for an injunction to restrain either the trespass itself when only in contemplation, or the continuance of the trespass after it had been accomplished, it is clear that these defendant companies were necessary and proper parties. It is not necessary to determine whether or not the board of improvement of the city of New York would also be proper parties. No objection is taken either by demurrer or answer to the nonjoinder of these other parties, and the objection that there is a defect of parties is therefore waived.

The rule is well settled that one who aids, abets, or incites in the perpetration of a trespass is liable as well as the direct perpetrator; and one ratifying a wrongful act becomes responsible for that act even though the act were done without authority. 26 Am. & Eng. Enc. Law, pp. 575, 576, and cases there cited. Assuming that those commissioners were directly responsible for the trespass in the first instance, the act of the railroad companies in paying the amount provided to be paid by the contract for the erection of the structure, their participation in such construction, the fact that they were to be in exclusive occupation of the structure when completed, and that they concededly contemplated using the structure for the purposes of a railroad as soon as completed, were certainly an adoption and ratification of the acts of the commissioners in proceeding to construct this railroad under the authority conferred by the legislature, when the purpose for which the authority was conferred was the erection of the structure for the exclusive use of the railroad companies.

I think, therefore, that this action was properly brought to restrain these defendants from continuing the erection of this structure, which was a trespass upon the plaintiff's easements and property rights in the streets, and to restrain them from occupying or using it in the future, and that these defendant railroad compa-

nies had adopted and ratified the acts of these commissioners, so as; to become liable to the plaintiff for the damages sustained in consequence of the construction and maintenance of the structure constituting the trespass. I think, also, that the defendants were responsible for any injury caused by the construction of the temporary structure for the use of the defendants' road, which was used by them, and which involved a trespass upon the plaintiff's property, and that this action could be maintained to enjoin the continued use of such temporary structure, and to recover damages from the defendant companies sustained in consequence of its construction and use.

The statement in the prevailing opinion, "But in no event could the railroad companies be liable for the act of this contractor unless they authorized his work or in some way undertook to control it," seems to me to be opposed to every principle upon which wrongdoers or trespassers are held liable for acts done on their behalf, which they have ratified by the subsequent acceptance of the benefit derived therefrom, when such acts are wrongful, and appropriate the property of others without their consent or without compensation.

For this reason I dissent from the views of Mr. Justice RUMSEY as to the liability of these defendant railroad companies for the trespass upon the plaintiff's property caused by the construction and maintenance of this elevated railroad structure. I concur, however, in the reversal of the judgment on the ground of the improper admission of evidence as to the damage upon the house fronting upon 124th street.