CHARLES WELDE, Respondent, *v.* THE NEW YORK AND HARLEM RAILROAD COMPANY et al., Appellants, Impleaded with Others.

*Welde* v. *N. Y. & H. R. R. Co.*, 53 App. Div. 637, reversed.
(Argued April 18, 1901; decided October 1, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July

26, 1900, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to obtain an injunction restraining the defendants from maintaining an elevated railroad station structure on Park avenue in the city of New York and for damages.

*Ira A. Place, Samuel E. Williamson* and *Alexander S. Lyman* for appellants.

*Thomas P. Wickes* for respondent.

O'BRIEN, J. The plaintiff is the owner of real property abutting upon Park avenue in front of the railroad operated by the defendants. The Harlem railroad was incorporated in the year 1831, but not constructed until the year 1837. Since that time various changes have been made in its roadbed and structure as well as in the street through which it passes. The questions involved in this appeal are to be determined by the findings of the court which appear in the record and which do not appear to be assailed by either party. The case is presented to us upon these findings, and the only question that we are now concerned with is the proper legal conclusion to be drawn from the facts so found.

What is now Park avenue was laid out on a map as early as the year 1807 to the width of one hundred feet. Subsequently, under a statute passed in 1837, this map was amended and the street as thus laid out was widened so as to constitute an avenue one hundred and forty feet in width; but the street was not actually opened and laid out as such until after the year 1850. It was then opened to the public as a street and subjected to the control of the municipal authorities, and has ever since remained a public street one hundred and forty feet in width, at least from Thirty-fourth street to the Harlem river. The defendants' railroad is constructed and operated in this street, and has been for over sixty years. In January, 1832, one Isaac Adriance, the plaintiff's remote grantor, then owned the land described in the complaint and the land comprising what is now the bed of Park avenue or the street in

question. At that time he executed and delivered to the Harlem Railroad Company a deed of a strip of land twenty-four feet in width in the center line of this avenue from the southerly side of One Hundred and Twenty-fourth street to One Hundred and Twenty-seventh street, " together with the power of sloping their embankments or excavations so much farther beyond the lines of said premises hereinbefore granted as may be necessary to support their works, not, however, extending beyond the width of the avenue." As the avenue was then one hundred feet wide, that was the utmost extent of the grant to the railroad, and it is conceded that whatever rights the defendants acquired under. this grant may be asserted against the plaintiff, who has succeeded to the title of Adriance and is bound by any consent or conveyance by him for railroad purposes. It will be seen by the terms of this grant that the railroad was authorized, when necessary, to support the work, to place an embankment in the street to the width of one hundred feet at the bottom in order to procure a proper slope. It is also apparent that wherever it was necessary to make rock cuts or excavations through high ground, that the railroad was authorized to make excavations one hundred feet in width at the surface of the ground, or at least if that was necessary in order to give the proper slope to the excavation. The question arises as to the proper construction of this conveyance. It is obvious that the railroad and not the grantor was to be the proper judge to determine where excavations and embankments were necessary and the proper width and slope of the same within the limits of the one hundred feet. Whether the reasonable and practicable construction of this grant is that the railroad acquired thereby the consent of the property owner to the construction and maintenance of a railroad in the street as then laid out to the width of one hundred feet, or is limited to less than that by other considerations, is a question that would appear to be involved in the case, but may not be necessary to decide in view of the condition of the present record.

This action was commenced on the tenth day of October, 1895, and at that time, or at the time of the trial, the defendants' railroad was operated in Park avenue upon a steel

viaduct structure eighty-two feet wide. It is a structure for four railroad tracks, supported upon five rows of columns, the outer rows of columns being placed substantially along the curb line of the avenue. Longitudinal plate girders were erected over the supporting columns so that the structure, or more properly speaking the columns, were about twelve feet and ten inches distant from the plaintiff's house line. The main structure is entirely within the limits of the street as originally laid out to the width of one hundred feet, but as the girders extend beyond the main structure and are supported by columns at the curb line of the street, these columns or some of them are beyond the original street lines, but within the lines of the street as subsequently widened to one hundred and forty feet. Prior to the time that this structure was erected the railroad was operated in a rock cut at this point about sixty-two feet in width. The present structure was erected by a commission appointed by an act of the legislature, for the purpose of improving the street and enabling the public to use it to the full width by elevating the railroad structure at a proper height from the surface of the street. The statute which authorized this change in the operation of the railroad is chapter 339 of the Laws of 1892. It appears from the findings that this change was expressly directed by the statute and was the act of the state itself through this commission, the railroad company simply paying a portion of the expense in the form of an assessment. This was the situation, as disclosed by the findings, at the time of the commencement of this action. And an examination of the complaint shows that the action was commenced upon the theory that all these changes were made by the railroad company itself, whereas the trial court found that they were made by the commission under the statute, and that the railroad company could not be subjected to any liability in consequence of anything done by this commission. By chapter 594 of the Laws of 1896, the act of 1892, above referred to, was amended, and the defendants were required to erect and maintain a station at One Hundred and Twenty-fifth street upon a modified structure, the plans for which are particularly specified in the statute. This act directed the railroad to reduce the width of the main structure to eighty-two

feet, as it now is. The structure erected by the commission was much wider. The reason for thus directing the structure to be narrowed was, doubtless, to furnish proper egress and ingress from the station to the trains. Whatever the purpose was, the railroad complied with the mandate of the statute and made the changes precisely in the manner therein specified, and this is the only act which, according to the findings, is to be attributed to the defendants. Since February 6th, 1897, the defendants' trains have been operated on this four-track viaduct structure, as they now are, and so far as appears that was the earliest date of the use of this structure by the defendants. The findings of the court, as they appear in the present record, naturally suggest the following questions:

(1) Did the Adriance deed, before referred to, operate as a consent by the plaintiff's predecessor in title to the mainte-nance and operation of the railroad in front of his premises in this street covering a space not to exceed one hundred feet wide?

(2) Does the present viaduct structure, so far as it occupies this one hundred feet space, constitute any trespass or invasion of the plaintiff's property rights, and, if so, to what extent? (*Conabeer* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 474.)

(3) In view of the grant from the plaintiff's predecessor in title, already referred to, and the acts of the legislature above mentioned, is this viaduct structure, upon which the railroad is operated, rightfully and lawfully in the street?

(4) This structure having been erected under the authority of the state itself, in a public street, in order to improve the street for public travel, can the plaintiff maintain an action to enjoin the operation of the railroad, or to recover damages against the defendants, in consequence of the existence of the structure, or its use by the defendants?

(5) The structure, including the changes made subsequent to the year 1896, having been erected in pursuance of the command of the legislature and in precise conformity with the plans and specifications indicated in the statute, has the plaintiff any right of action against the defendants to enjoin the operation of the railroad, or to recover damages, in so far as the structure exists within the original limits of the street,

that is to say, within the one hundred feet? (*Hill* v. *Mayor, etc., of N. Y.* 139 N. Y. 495; *Bohan* v. *Port Jervis Gas Light Co.,* 122 N. Y. 18; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.,* 103 N. Y. 10; *Morton* v. *Mayor, etc., of N. Y.* 140 N. Y. 212; *D., L. & W. R. R. Co.* v. *City of Buffalo,* 158 N. Y. 266, 478; *Hill* v. *Managers of Met. Asylum District,* L. R. [4 Q. B. Div.] 433; *S. C.* on appeal, 6 App. Cas. 193; *Truman* v. *London, Brighton & S. C. R'way Co.,* L. R. [25 Ch. Div.] 423.)

As we are of opinion that there must be a new trial of the case for the reasons which will be presently stated, and as it is possible that the findings may be changed, we do not deem it necessary nor timely to discuss these questions. The facts as they now appear in the record and in the findings of the trial court may possibly be modified hereafter, and, therefore, we leave these questions for consideration when they are necessary to a decision of the case. While the trial court found that this structure was erected by the commission in pursuance of the statute, it did not find expressly whether it was a lawful structure or not, or whether its construction or the operation of the railroad upon it was an invasion of any of the plaintiff's property rights. It is true that since it awarded rental and permanent damages to the plaintiff it might be that the learned trial court was of opinion that the structure, or at least some part of it, was an invasion of the plaintiff's rights of property. The learned trial judge decided in substance that the railroad was entitled to occupy the street for railroad purposes to the width of sixty-one feet and eight inches, and this proposition seems to have been based on the fact that that was the width of the rock cut in which the train was operated prior to the changes herein indicated. It was not decided whether the defendant was entitled to the use of the street beyond these limits under the grant from the original owner. It may be inferred from the result of the decision that the learned trial judge was of the opinion that the present structure, in so far as it extends beyond the width of the original rock cut, is an unlawful structure and an encroachment upon the plaintiff's rights, although that is not expressly stated in the decision. The learned trial judge, however, found that from April, 1893, to the time of the trial,

the plaintiff's premises had produced an income less by seventy-two hundred dollars than they would have produced if the improvements and changes in Park avenue and in the defendants' railroad structure, as required by chapter 339 of the Laws of 1892 and the amending acts, had not been made; that this loss of income had not been uniform, but had been greater during the years 1894, 1895 and 1896, when the work of erecting that part of the structure which was to be devoted to the station was done, and when the original structure was in part taken down and the modified structure erected and the second station finished and completed. Now all this work, except that of narrowing the structure under the act of 1896, was done, not by the defendants, but by the state through the commission already mentioned, and as we have seen the learned trial judge held that the defendants were not liable for any damage resulting from the action of that commission in erecting the structure. All that the defendants did was to narrow the structure and build a station in the street under the express direction of the legislature contained in the act of 1896. But it is quite apparent that since the learned trial judge awarded to the plaintiff just seventy-two hundred dollars as rental damages, he must have held the defendants liable for the act of the commission in changing the street and erecting the viaduct structure. Very few, if any, of the injurious acts alleged in the complaint have been found by the learned trial court, and such acts of the defendants, as appear in the findings, commanded and contained in the law of 1896, in the modification of the structure by diminishing its width, all occurred subsequent to the commencement of the action. But it may be that the course of the trial justified the court in finding the facts as they existed at the date of the trial, although all these facts so far as they attributed any interference by the defendants with the plaintiff's light, air and access, occurred subsequent to the commencement of the action.

We think that the judgment must be reversed and a new trial ordered, with costs to abide the event.

PARKER, Ch. J., MARTIN and LANDON, JJ., concur; BARTLETT, VANN and CULLEN, JJ., concur in result.

Judgment reversed, etc.