GUSTAV R. FRIES, Respondent, *v.* THE NEW YORK AND HARLEM RAILROAD COMPANY et al., Appellants.

RAILROADS — LIABILITY OF THE NEW YORK AND HARLEM RAILROAD COMPANY FOR CONSEQUENTIAL DAMAGES RESULTING FROM PARK AVENUE IMPROVEMENT IN THE CITY OF NEW YORK — L. 1892, CH. 339. Where the New York and Harlem Railroad Company possesses the right, as against an abutting owner who has no title to the avenue, to maintain the railroad and run trains along and over Park avenue in the city of New York, and the state interferes for a public purpose by a valid law which expressly and specifically requires the grade upon which the railroad was run on the avenue to be changed, and causes to be erected a steel viaduct upon which the company is required to run its trains, and, without negligence or want of skill, and without directly invading the private property of the abutting owner, the company performs only such acts as are expressly required by the state, in the absence of any statute providing for compensation, it is not liable for remote or consequential damages sustained by him by reason of its having obeyed the statute.

*Fries* v. *N. Y. & Harlem R. R. Co.*, 57 App. Div. 577, reversed.

(Argued April 19, 1901; decided December 31, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 16, 1901, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Ira A. Place, Samuel E. Williamson* and *Alexander S. Lyman* for appellants. The conveyance by Hall to the railroad company estopped himself, and all subsequent grantees of the lots, which he owned at the time of the conveyance to the railroad company, from subsequently making any claim against the railroad company. (*Conabeer* v. *N. Y. & H. R. R. Co.*, 156 N. Y. 474; Code Civ. Pro. §§ 369, 371; 1 Am. & Eng. Ency. of Law [2d ed.], 861, 862; *Argotsinger* v. *Vines*, 82 N. Y. 308; *Thompson* v. *Burhans*, 79 N. Y. 93; *Hasbrouck* v. *Vermilyea*, 6 Cow. 678; *Dominy* v. *Miller*, 33 Barb. 386; *Finley* v. *Cook*, 54 Barb. 9; *N. R.*

*E. & T. Co.* v. *Hendrickson*, 139 N. Y. 440; *Abrams* v. *Rhoner*, 44 Hun, 507; *Eldridge* v. *City of Binghamton*, 120 N. Y. 309; *Baker* v. *Oakwood*, 123 N. Y. 16.) Adverse possession under color of title conferred by the Hall deed having cured whatever infirmities in the title may have existed at the time the deed was delivered to the company, the defendants have acquired as against the plaintiff the right to maintain and use at least their two central tracks at any grade, duly authorized, without liability for injury or damage occasioned by such maintenance and use. (*Conabeer* v. *N. Y. & H. R. R. Co.*, 156 N. Y. 474; *Burrell* v. *N. Y. & H. R. R. Co.*, 41 App. Div. 510; *Welde* v. *N. Y. & H. R. R. Co.*, 29 Misc. Rep. 13; *Sander* v. *N. Y. & H. R. R. Co.*, 42 App. Div. 618.) Defendants having established their right to maintain and use their two central tracks at their present elevation, plaintiff's right of action depended upon the showing of substantial injury and damage resulting to him from the maintenance and use of the two outer tracks. (*Conabeer* v. *N. Y. & H. R. R. Co.*, 156 N. Y. 474; *Birrell* v. *N. Y. & H. R. R. Co.*, 41 App. Div. 510.) The plaintiff was permitted to recover past or rental damages, which belonged to the lessee of a portion of the premises, whose term began prior to the alleged trespass of defendants. (*Kernochan* v. *N. Y. El. R. R. Co.*, 128 N. Y. 559; *Hine* v. *N. Y. El. R. R. Co.*, 128 N. Y. 571; *Kearney* v. *Met. El. Ry. Co.*, 129 N. Y. 76; *Witmark* v. *N. Y. El. R. R. Co.*, 149 N. Y. 393; *Kernochan* v. *Manh. Ry. Co.*, 161 N. Y. 339; *N. H. Co.* v. *Bement*, 163 N. Y. 505.) The admission of evidence as to the course of values on Madison and Lexington avenues was error. (*Hunter* v. *M. Ry. Co.*, 141 N. Y. 281.)

*Joseph A. Flannery* for respondent. The defendants acquired no fee title to any part of Fourth avenue as against the plaintiff, either by deed or adverse possession. They acquired merely the prescriptive right to maintain the railroad in the depressed cut but at no other different height or width. (*Lewis* v. *N. Y. & H. R. R. Co.*, 162 N. Y. 202;

*Vail* v. *L. I. R. R. Co.*, 106 N. Y. 287 ; *People* v. *Kerr*, 27 N. Y. 188 ; *Kane* v. *N. Y. E. R. R. Co.*, 125 N. Y. 181 ; *Hughes* v. *Bingham*, 135 N. Y. 352 ; *Burbank* v. *Fay*, 68 N. Y. 69 ; *St. Vincent Asylum* v. *City of Troy*, 76 N. Y. 114 ; *Matter of Dept. of Parks*, 53 Hun, 559 ; *Bridges* v. *Wyckoff*, 67 N. Y. 130 ; *White's Bank* v. *Nichols*, 64 N. Y. 65 ; *Matter of Adams*, 141 N. Y. 297.) The railroad company was not a purchaser for a valuable consideration, and it took its deed with notice of the city's title. (*Lewis* v. *N. Y. & H. R. R. Co.*, 162 N. Y. 202 ; *Purdy* v. *Coar*, 114 N. Y. 489 ; *Spencer* v. *Carr*, 45 N. Y. 406, 410 ; *Nat. Bank* v. *Lanier*, 7 Hun, 628 ; *Ten Eyck* v. *Whitbeck*, 156 N. Y. 352 ; 91 Hun, 626 ; *Foster* v. *Beardsley Co.*, 47 Barb. 505 ; *Wilsey* v. *Dennis*, 44 Barb. 359 ; *People* v. *Snyder*, 41 N. Y. 397 ; *Robinson* v. *Wheeler*, 25 N. Y. 260 ; *Bigelow* v. *Bigelow*, 39 App. Div. 103.) The railroad company did not acquire title in fee by adverse possession to any part of Fourth avenue prior to the completion of the street opening proceedings in 1853. (*Fryer* v. *Rockefeller*, 63 N. Y. 268 ; *Archibald* v. *N. Y. C. R. R. Co.*, 157 N. Y. 582 ; *Delancey* v. *Piepgrass*, 138 N. Y. 146 ; *Doherty* v. *Matsell*, 119 N. Y. 647 ; *Stevens* v. *Hauser*, 39 N. Y. 302 ; *St. Vincent's Asylum* v. *City of Troy*, 76 N. Y. 114.) The operation of a surface railroad in front of plaintiff's premises was not an invasion of the easements of abutting owners, and, therefore, defendants acquired no rights by adverse possession until they took possession of the depressed cut in the year 1875. (*Fobes* v. *R., W. & O. R. R. Co.*, 121 N. Y. 505.) By the depression of the tracks below the grade of the avenue under the act of 1872, the railroad company lost all rights as against the easements of abutting property owners which it may have acquired by virtue of its grant of the twenty-four-foot strip from Charles Henry Hall and its user hereof. (*Tocci* v. *Mayor, etc.*, 73 Hun, 52.) The trial court did not award to plaintiff any rental damages belonging to a lessee. (*Amherst College* v. *Ritch*, 151 N. Y. 282 ; *Petrie, etc.*, v. *Trustees*, 158 N. Y. 458 ; *Maher* v. *C.*,

etc., R. R. Co., 67 N. Y. 52; Reese v. Boese, 94 N. Y. 623; Ostrom v. Greene, 161 N. Y. 353; Cox v. Stokes, 156 N. Y. 491; Kernochan v. M. Ry. Co., 161 N. Y. 339.) Appellants cannot now raise the objection that the rental damages awarded plaintiff include leased premises, having failed to raise that question both in the trial court and Appellate Division. (Martin v. Home Bank, 160 N. Y. 190.) The trial court properly admitted evidence of the course of fee and rental values in Madison and Lexington avenues. (Hunter v. M. Ry. Co., 141 N. Y. 281; Jamieson v. K. C. El. R. R. Co., 147 N. Y. 325; McGean Case, 117 N. Y. 219; Carroll Case, 14 App. Div. 282; Lazarus Case, 14 App. Div. 439; Wyse v. Wyse, 155 N. Y. 372; Matter of N. Y. C. & H. R. R. R. Co., 90 N. Y. 342.)

O'BRIEN, J. The plaintiff is the owner of a three-story frame building on Park avenue, at the southwest corner of 129th street, in the city of New York. The building contains eight stores fronting on the avenue. This avenue is one hundred and forty feet wide, and the defendants own and maintain a railroad therein, and have under some form and under some arrangement for over sixty years. The plaintiff claims that the railroad has invaded his property rights and is a trespasser upon them. For this trespass the trial court held that the defendants should pay to the plaintiff the sum of five thousand five hundred dollars, past and future damages, or, in default of such payment, be perpetually enjoined from operating the railroad. This appeal involves an inquiry into the principles upon which the judgment is founded. There is considerable discussion upon the briefs of counsel who have argued the case concerning the effect of a deed to the railroad by the former owner of the plaintiff's property and many other details relating to the right of the railroad to construct and maintain the same in the street in front of the premises in question.

I cannot perceive how these questions can be of much consequence in the disposition of this appeal, since the trial court

made an express finding that under this deed various resolutions and acts of the city authorities at various times and under certain statutes referred to, and by lapse of time and the acquiesence of the plaintiff and his predecessors in title, the defendants "acquired the right without liability to the plaintiff to have, maintain and use their railroad and railroad structures as the same were maintained and used prior to February 16th, 1897, as hereinbefore described." Here we have an express finding that on and prior to the date named the defendants were entitled to have and maintain their railroad in the street in question as against the plaintiff and all the world, without let or hindrance from any one, and surely there could be no trespass upon the plaintiff's rights prior to that date. The trial court also found how the railroad had been maintained and operated on and prior to the date mentioned, as follows : "The said railroad prior to February 16th, 1897, was operated along the center of said Park Avenue in front of the plaintiff's premises in a depressed cut about fourteen feet below the surface of said Park Avenue and sixty-one feet and eight inches wide, which said railroad cut was bounded on each side by parapet walls of about two feet six inches above the surface of said avenue, which said embankment or viaduct cut off access from one side of said avenue to the other, except at the intersection of 128th and 129th street, at which points there were bridges for vehicles and foot passengers across the said railroad cut." According to this finding the defendants had the right to maintain a railroad in front of the plaintiff's premises that practically cut him off from access to the opposite side of the street except by means of bridges located at intersecting streets. The court also found that subsequent to the date mentioned the manner of operating the railroad was changed, and this is the finding on that subject: "That subsequent to the passage of Chapter 339 of the Laws of 1892, there was commenced within the lines of Park Avenue and in the center thereof the construction of a new viaduct of iron and steel, said structure being about twenty feet high above the surface of Park Avenue and

about fifty-nine feet wide. Said work was done under the supervision of the Board for Park Avenue improvement above 106th street, and the said structure was completed and accepted by the defendants on February 16th, 1897. That neither of the defendants are liable for any fee or rental damage which may have been sustained prior to that date; that said permanent structure and the operation of trains thereon are, and since February 16th, 1897, have been a continuous trespass upon plaintiff's easement of light and air appurtenant to his said premises, and solely in consequence of said trespass and aside from any other causes the rental value of said premises was depreciated from said date down to April 2d, 1900, the date of trial, in the sum of $1,500."

It will be seen that the trial court held that the present viaduct and the operation of trains thereon, are, and since the date mentioned, have been, a continuous trespass upon plaintiff's easements of light and air appurtenant to his premises. It also found that this structure was built and the trains operated thereon under and in pursuance of the provisions of chapter 339 of the Laws of 1892. An examination of that statute discloses very clearly a comprehensive scheme on the part of the state for the improvement of Park avenue as a public street by removing the railroad tracks from the cut, closing up the cut and then regulating, grading and paving the street. It was a legislative scheme for the accomplishment of a public improvement. The railroad company had nothing to do with it except to pay such assessment as was imposed upon it by the public authorities to defray the expense of the improvement. Whatever changes were made in the street and in the operation of the railroad were made not by the defendant but by the state in virtue of its general power to improve and regulate public streets. The defendant could not resist the improvement if it would, nor could it refuse when the viaduct was constructed to operate its trains upon it, even if it wanted to, without subjecting itself to a sentence of death at the hands of the state, as all corporations do that refuse to discharge the duties or perform the functions

for which they have been created.  There is no finding and no claim that the removal of the tracks from the depressed cut to the elevated viaduct was the act of the defendant.  On reading the statute it will be seen that it was an act of the state, and how the defendant in one day became a trespasser upon the plaintiff's property rights it is very difficult to conceive.  Another case growing out of this improvement was recently before this court ( *Welde* v. *N. Y. & Harlem R. R. Co.*, 168 N. Y. 597), in which the effect of this statute was pointed out.  If the viaduct was lawfully constructed and existed in the street under the authority of law, it is impossible to conceive how the defendant could be guilty of a trespass in the operation of its trains upon it.  It was constructed for that purpose and the defendant was obliged to use it in the exercise of its franchise and the discharge of the duties due to the public.

The state resolved to displace the railroad in the depressed cut in order to fill up the cut, regulate, pave and grade the whole street, and to this end commanded the railroad to run its cars upon tracks placed upon a viaduct constructed by the state under the statute, and the railroad obeyed.  If in doing so it became a trespasser, it must be because the legislation providing for the change violated some property right of the plaintiff which is protected by the Constitution.  In other words, it must be because the statute under which the change was made is unconstitutional.  I am unable to perceive any reason why the legislature had not the power to improve the avenue by removing the railroad from the cut to a viaduct, and if the change affected the rental or fee value of the property of an abutting owner having no title to the street, it was but a consequence of the improvement for which the railroad was not responsible.  The law is well settled in this state that where the property of an abutting owner is damaged, or even his easements interfered with in consequence of the work of an improvement in a public street conducted under a lawful authority, he is without remedy or redress, even though no provision for compensation is made in the statute.

Whatever detriment the improvement may be to the abutter in such cases, is held to be *damnum absque injuria*. (*Radcliff's Executors* v. *Mayor, etc. of Brooklyn* 4 N. Y. 195; *Talbot* v. *N. Y. & H. R. R. Co.*, 151 id. 155; *Folmsbee* v. *City of Amsterdam*, 142 id. 118; *Rauenstein* v. *N. Y., L. & W. Ry. Co.*, 136 id. 528; *Atwater* v. *Trustees, Vil., Canandaigua*, 124 id. 602; *Benner* v. *Atlantic Dredging Co.*, 134 id. 156.)

The change from the manner of operating the railroad in the depressed cut to an elevated viaduct was made in precise conformity to the mandate of an express statute, and hence even if the railroad made the change itself instead of the state, it would not be liable to the plaintiff. (*Hill* v. *Mayor, etc., of N. Y.*, 139 N. Y. 495; *Bohan* v. *Port Jervis G. L. Co.*, 122 N. Y. 18; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 id. 10; *Morton* v. *Mayor, etc. of N. Y.*, 140 id. 212; *D., L. & W. R. R. Co.* v. *City of Buffalo*, 158 id. 266; Id. 478; *Hill* v. *Managers of Met. Asylum Dist.*, L. R. [4 Q. B. Div.] 433; *S. C.* on appeal, 6 App. Cas. 193; *Truman* v. *London, B. & S. C. R'way Co.*, L. R. [25 Ch. Div.] 423.) The railroad originally covered nearly 62 feet of the street surface. Now the elevated structure covers only 59 feet above the surface. It would seem to be impossible to sustain the judgment in this case without assailing the constitutional validity of the statute under which this change was made, but I think it would be difficult, in view of the authorities cited, to state any ground upon which it can be questioned. But if this were otherwise it is clear that the plaintiff upon the present record is in no condition to raise any such question. He has not raised it in any form in any court, and it cannot be raised for him now as this court has recently held. (*Dodge* v. *Cornelius*, 168 N. Y. 242.) The plaintiff has not only refused to raise any question concerning the validity of the statute in this or any other court, but has actually affirmed its validity by setting it out in his complaint and basing his action upon it. So we have the case of a change in the grade of a street which necessitated a change in the location of the rail-

road tracks, all made under a valid statute, and that alone is said to constitute the alleged trespass. The plaintiff's claim would seem to be answered by the principle laid down in the *Rauenstein* case, the other cases first cited, and in *Ottenot* v. *N. Y., L. & W. Ry. Co.* (119 N. Y. 603). The judgment in this case rests upon what may be called, for want of a better expression, a legal paradox. All that was done that in any way affects the plaintiff's property rights was done, not by the defendant, but by the state. • The state engaged in the municipal duty of improving a street in which there was the right to maintain a railroad. It constructed a viaduct in order that the railroad might be operated upon it, and the railroad obeyed. This court has held that the railroad could not resist, which means, of course, that the legislation was valid. (*Lewis* v. *N. Y. & H. R. R. Co.*, 162 N. Y. 226.) On the 15th of February, 1897, it is found that the defendant was rightfully and lawfully operating its railroad in this public street. The next day, as has been decided, it became a trespasser, not only in running trains upon the viaduct, but by maintaining it in the street. It would seem to follow from this that while the state had power to do everything that was done and to compel the railroad to be operated upon the viaduct, yet the railroad was guilty of a trespass in doing so; that is to say, the state compelled the railroad to commit a trespass and the railroad must be held liable for everything done by the state in the exercise of its supreme authority. The conclusion of the learned trial judge seems to me to involve this method of reasoning, and it would seem that a result which in its last analysis depends upon such arguments must necessarily be unsound.

The elevated railroad cases in this court proceed upon the principle that, as against abutting owners, the railroad was unlawfully in the street, as they had not consented to the construction or conveyed the right to interfere with their easements. But in the case at bar we have an express finding that the defendant had acquired the right as against the plaintiff to use the street for the operation of the railroad. Hence, the principles upon which that mass of litigation proceeded

have no application to this case, and so this court has held. (*Conabeer* v. *N. Y. C. & H. R. R. R. Co.*, 156 N. Y. 474.)

On reading the opinions in the court below, both at the trial and on appeal, it will be seen that no reason has been given for the judgment, except that it was supposed to be required by something decided by this court in *Lewis* v. *N. Y. & H. R. R. Co.* (162 N. Y. 202). I do not think that anything was presented, discussed or decided in that case that warrants the judgment in the case at bar. In the first place, the learned judge who gave the opinion in that case was careful to say at its conclusion : " We have decided the case before us, and have not tried to decide other cases, which, although arising in the same section, rest upon different facts and may be controlled by different principles of law." This case does rest upon different facts, comes here in a very different way and is governed by different legal principles, and so is within the saving clause of the opinion. (1) In the first place the legal questions here mentioned were not presented, argued or discussed at all in that case. (2) In that case both parties appealed from a small judgment, and, hence, neither party was bound by the findings, except so far as there was evidence to support them. The evidence in support of the findings was, therefore, open for discussion here, and it will be seen from the report of the case that the discussion proceeded not so much upon the facts found as upon the proofs given, the decision below not being unanimous. The question of title in the railroad and of adverse possession were the principal matters discussed. Here we are relieved from all discussion of the evidence, since we have specific findings that the plaintiff does not question by appeal or otherwise, and that conclude the defendant as to the facts, and so we have a situation entirely different. (3) It was not found in that case that the railroad was lawfully in the street on the day that the present viaduct was completed, but only that it was lawfully in the street at an earlier date by three years. In the meantime it seems that it was shown in that case that the railroad was

using an old viaduct constructed of stone, so far as it appears upon its own authority, while in this case no disturbing element of that kind intervenes, and hence we have to deal only with the single question whether the defendant was guilty of a trespass in the use of a viaduct constructed for that purpose by the state under a statute, and which the defendant was obliged to use, whether it would or not. These considerations mark a material distinction between the *Lewis* case and the one at bar. This case is not embarrassed by any such elements as existed in the case referred to. I have quoted the findings upon which this case comes here, and so long as these findings stand in the case, I am unable to see how there can be any recovery.

There are two other questions in the case of minor importance, but which merit a brief notice. The plaintiff became the owner of the premises in question in November, 1891. The second floor of the block was devoted to a dancing hall and the third or top floor to lodging rooms. In 1893 the plaintiff leased the dancing hall to a tenant with the use of the lodging rooms for a long term of years, and in 1896 he leased to the same tenant the corner store and basement. This tenant was in possession, paying the stipulated rent for the premises at the time of the commencement of this action. It will be seen by the findings of the court that the plaintiff was allowed for the diminution in the rental value from February 16th, 1897. The damage to the rental value, if any, therefore, belonged to the tenant and not to the landlord as to that part of the property which was leased. The plaintiff, who was the landlord, lost nothing by the depreciation, because his rental was fixed long before the trespass began. It is only in those cases where the leasing takes place after the trespass or interference with the easements that the landlord is permitted to recover. (*Kernochan* v. *N. Y. El. R. R. Co.*, 128 N. Y. 559; *Hine* v. *N. Y. El. R. R. Co.*, Id. 571; *Kearney* v. *Met. El. Ry. Co.*, 129 id. 76; *Witmark* v. *N. Y. El. R. R. Co.*, 149 id. 393.)

It must be apparent that at least with respect to the plain-

tiff's easement of access, it must have been greatly improved by the removal of the railroad from the cut and the grading and paving of the street below the elevated structure. How the change interfered with his easements of light and air it is difficult to conjecture. But assuming that the findings of the court below in that respect are supported by some evidence, it is important to notice the line of proof given as to depreciation in rental and fee value. It appears from the record that the plaintiff called an expert who testified to the course of values in real estate on Madison and Lexington avenues, and was asked if there was anything which should induce the upward tendency in value in these avenues since 1892, which would have obtained in Park avenue had there been no change in the railroad. The questions in regard to the course of values on both these streets were objected to as incompetent. The objection was overruled and the defendants' counsel excepted. It will be seen that the witness was required to institute a comparison between property on Park avenue and on these other avenues for the purpose of proving damages. Park avenue was concededly subject to a servitude as of right for the use and operation of the railroad. Whatever effect that use or operation had upon the abutting property, the defendants cannot be made liable therefor. The other two avenues mentioned were not subject to any such servitude, and it was, I think, improper to give proof under which the court was required to institute a comparison of values between property on these two avenues which were situated so differently from that upon the avenue where the railroad was rightfully constructed and operated. It may be that in the elevated railroad cases proof of this character was admissible for the reason, as has already been pointed out, that in those cases there was no servitude upon the street as against the abutting owner. If, in the case at bar, the defendant had no right to be in the street as against the abutter, then it may be that the proof would be admissible, but to compare the value of property on two avenues where there was no right to have or maintain a railroad, with property on another

avenue where there was such a right, was improper and misleading.

·The judgment should be reversed and a new trial granted, costs to abide the event.

MARTIN, J.    Although there is a divergence of opinion among the members of the court as to some of the legal questions involved in this case, yet all agree that the statute (L. 1892, ch. 339) under which the acts complained of were performed is valid, and that the legislature did not transcend its powers in enacting it.    It must also be admitted that all the acts of the defendants for which the plaintiff claims they are liable were performed under and in compliance with the direct and express mandate of that statute.    That there was no encroachment upon or actual interference with the plaintiff's premises, and that the improvement was made for the benefit of the public and in a proper manner, are likewise practically conceded.    Hence, the broad question presented is whether, in the absence of any statute providing for compensation, the defendants are liable for remote or consequential damages in having performed only such acts as were required by the express provisions of the statute upon works of a public nature, where there was neither negligence nor want of skill and no direct invasion of any private property of the plaintiff.    We think not.    In every civilized community controlled by governmental or municipal laws or regulations, there are many cases where the individual must be subjected to remote or consequential damages or loss to which he must submit without other compensation than the benefit he derives from the social compact.    It is well settled by many decisions of this court that acts which are authorized by an express enactment of the legislature and performed in good faith upon a work of a public character, do not render the persons performing them liable for consequential damages unless there is an absence of due care or skill in the execution of the work. In other words, an act done under express authority of law for a public purpose, if done in a proper manner, and the prop-

erty of the individual is not taken or encroached upon, will not subject the party doing it to an action for its consequences whatever they may be, unless the law itself provides compensation for injuries of that character. This is the rule where public works for the general welfare are constructed or operated.

Moreover, it seems to us that the principles of law relating to the change of the grade of streets, when lawfully made, are applicable in this case. Here the defendants possessed the right to maintain their railroad and run their trains along and over the street. With their rights, as they then existed, they were content. The sovereign power of the state, however, interfered for a public purpose by a law which expressly and specifically required the grade upon which the railroad was run on this street to be changed, and caused to be erected a steel viaduct upon which the defendants were required to run their trains, so that every act of the defendants of which the plaintiff complains was required by express provision of law. Under these circumstances, it seems quite clear to us that the defendants, as they have not encroached upon the land of the plaintiff or in any way interfered with it, are not liable for any consequential damages the plaintiff may have sustained by reason of the defendants having obeyed the mandate of the statute. These views find support in the following authorities: *Lansing* v. *Smith* (8 Cow. 146); *Radcliff's Executors* v. *Mayor, etc., of Brooklyn* (4 N. Y. 195); *Wynehamer* v. *People* (13 id. 378, 401); *Davis* v. *Mayor, etc., of N. Y.* (14 id. 506, 522); *Bellinger* v. *N. Y. C. R. R.* (23 id. 42); *Selden* v. *D. & H. C. Co.* (29 id. 634, 642); *Coster* v. *The Mayor, etc., of Albany* (43 id. 399, 415); *Brooklyn Park Comrs.* v. *Armstrong* (45 id. 234, 245); *Kellinger* v. *42nd St. & G. S. F. R. R. Co.* (50 id. 206); *Losee* v. *Buchanan* (51 id. 476, 480); *St. Peter* v. *Denison* (58 id. 416); *Clemence* v. *City of Auburn* (66 id. 334, 339); *Moore* v. *City of Albany* (98 id. 396, 407); *Uline* v. *N. Y. C. & H. R. R. R. Co.* (101 id. 98, 107); *Conklin* v. *N. Y., O. & W. Ry. Co.* (102 id. 107); *Cogswell* v. *N. Y., N. H. & H. R. R. Co.* (103 id. 10);

*Heiser* v. *Mayor, etc., of N. Y.* (104 id. 68, 72); *Bohan* v. *P. J. G. L. Co.* (122 id. 18, 26); *Atwater* v. *Trustees Vil. of Canandaigua* (124 id. 602, 608); *Reining* v. *N. Y., L. & W. Ry. Co.* (128 id. 157); *Egerer* v. *N. Y. C. & H. R. R. Co.* (130 id. 108); *Benner* v. *A. D. Co.* (134 id. 156); *H. R. T. Co.* v. *W. T. & Ry. Co.* (135 id. 393, 411); *Rauenstein* v. *N. Y., L. & W. Ry. Co.* (136 id. 528); *Hill* v. *Mayor, etc., of N. Y.* (139 id. 495, 501); *Folmsbee* v. *City of Amsterdam* (142 id. 118, 122); *Talbot* v. *N. Y. & H. R. R. Co.* (151 id. 155); *Sullivan* v. *Dunham* (161 id. 290, 298); *Huffmire* v *City of Brooklyn* (162 id. 584, 589); *Uppington* v. *City of N. Y.* (165 id. 222, 228).

While in some of the cases cited the question here is not involved or decided, still, even in those cases the rule suggested has been recognized and admitted to be the existing law of this state.

Aside from the case of *Lewis* v. *N. Y. & H. R. R. Co.* (162 N. Y. 202) the only authorities upon which reliance is placed, to sustain a contrary doctrine, are the elevated railroad cases. While those cases have created a liability theretofore unknown, which we think should not be extended, still, it seems to us, they are not only clearly distinguishable from a case like this, but should be distinguished on the merits. In those cases, if correctly understood, the only authority the elevated railroad company had to appropriate the street was the consent of the legislature and the municipal authorities. There, there was no law prescribing what they should do or that required them to do it. Here, we have a valid statute which expressly and specifically provides what shall be done as to the change of the grade in this street or the erection of the viaduct, provides the manner in which it shall be done, and appoints, or provides for the appointment of, commissioners to carry the statute into effect. It then directs that upon the completion of such viaduct, the defendants shall run their trains over it. Thus in one case we have a mere consent or permission by the public authorities, while in the other we have an express and mandatory statute requiring the

defendants to do precisely what they did, and of which the plaintiff now complains. It seems to us that this distinction requires us to apply the general principle applicable to such a case and not the special law that has been created by the decisions in the elevated railroad cases.

While I agree generally with the views expressed by Judge O'Brien, I still think that the decision about to be made can be said to be in conflict with the *Lewis* case, and to such extent as it is, the *Lewis* case should be regarded as limited.

Cullen, J. (dissenting). I dissent from the decision about to be made because I regard it as not only inconsistent with our recent decision in the case of *Lewis* against this defendant (162 N. Y. 202), but as opposed to the prevailing law of this state. Four propositions are settled law with us: 1. That the damage inflicted on an abutting owner by a change in the grade of a street does not constitute a taking of property within the meaning of the Constitution, and that the abutter is not entitled to compensation for such injury unless some statute awards it. (*Radcliff's Exrs.* v. *Mayor, etc., of Brooklyn,* 4 N. Y. 195 ; *Talbot* v. *N. Y. & Harlem R. R. Co.,* 151 id. 155.) 2. That the use of the surface of a street or highway for the purpose of a railroad does not invade any property right of an abutting owner who has no title to the soil of the street. (*Kellinger* v. *F. S. St. & G. S. F. R. R. Co.,* 50 N. Y. 206 ; *Fobes* v. *R., W. & O. R. R. Co.,* 121 id. 505.) 3. That an abutter has an easement in the street for the purposes of light, air and access ; that the erection of an elevated structure for the purpose of carrying a railroad thereon is an invasion of such easement and an appropriation of the abutter's property rights, for which, under the Constitution, he must be compensated. (*Story* v. *N. Y. El. R. R. Co.,* 90 N. Y. 122. See all the elevated railroad cases since that decision.) 4. That while the public authorities may raise the grade of a street for street use, or may authorize the construction of a surface railroad on the street, in either case without liability to abutters, they cannot raise the grade of a street for the exclusive

use of a railroad without compensating an abutter for the injury inflicted. (*Reining* v. *N. Y., L. & W. Ry. Co.*, 128 N. Y. 157.)   The circumstances which distinguish a case which falls under one rule from one which falls under another rule are readily apprehended, and the rules are of comparatively easy application.    Whether the difference in circumstance is such as to justify the distinction in principle which prevails in our state is quite another question.    I admit that two rules of law, one of which declares that raising the grade of a street and the construction of a bank of solid filling opposite an abutter's premises is *damnum absque injuria*, and the other which holds that the erection of an elevated railroad is an invasion of the property rights of an abutter which cannot be constitutionally effected without compensation, may seem somewhat inconsistent.    But I intend not to be led into a discussion of that subject.    It is sufficient to say that such is the settled law of the state, and that the rules which I have stated, consistent or not, exist in full force and integrity in our jurisprudence at this very time, and that on their authority we are deciding cases at almost every term of court.   I may, however, remark in passing that if the attempt is to be made to harmonize the law on this subject, surely it should not be in the direction of extending the doctrine of *Radcliff's Exrs.* v. *Mayor, etc., of Brooklyn.*    That case has been repudiated in many jurisdictions, and though firmly imbedded in the law of this state, the hardships occasioned by its application have been so great that in most cases legislative enactments have given abutters the right to compensation for their injuries.    If while the legislature can authorize the laying of a surface railroad without compensation to the abutter, it cannot authorize the construction of a viaduct for an elevated railroad unless compensation be made to the abutter, it must be equally without power to transform a surface road into an elevated road without providing for such compensation.   It necessarily follows that, notwithstanding the legislature might have authorized the grade of Fourth avenue to be raised to the height of the structure for the erection of which the plaintiff brings this action, without liability

to abutters, that structure invades the plaintiff's property rights, an invasion for which he is entitled to compensation. To relieve the defendant from liability for such compensation it must trace its right to maintain the viaduct as against the abutter, not to the act of the legislature alone, but to a grant of some private property easement to which the plaintiff's title is subordinate or to prescription, which is merely the presumption of such a grant.

It is said that the legislature had power to authorize the improvement of Fourth avenue and to direct the railroad company to elevate its tracks. This cannot be doubted  But it could not relieve either the commissioners or the railroad company from paying for any private property taken for the improvement. If I am right in the proposition repeatedly held by this court that an abutter has an easement of light, air and access in a street as against all structures therein except those to be used for strictly street purposes, and as against all improvements save a change in the grade of the street itself, then the situation in no way differs from that which would have been presented had the legislature turned the railroad company off the street altogether and made it construct a new line on adjoining property. In either case the railroad company would be bound to pay for what it took. These propositions were not discussed in the *Lewis* case, but were assumed as settled by the previous decisions of this court and that decision could not have stood on any other foundation. What here has been written, there passed without the saying. In the *Lewis* case the defendant was held not to be answerable in damages until it began running its trains over the structure. This ruling did not proceed on the theory that the construction of the viaduct worked no trespass on the plaintiff's rights, but on the ground that the defendant did not participate in that trespass until it went into possession of the structure and ran its trains thereon. There is no inconsistency between the *Lewis* case and that of *Conabeer* against this defendant (156 N. Y. 474). The same learned judge that wrote in the earlier case concurred in the opinion

delivered in the later case. In the *Conabeer* case the trial court found as a matter of fact that no injury to the plaintiff's easement was occasioned by the new structure. In the *Lewis* case and in the present one the findings of fact are the exact reverse.

It is said that the trial court has found the structure to be lawful and that such finding is binding upon us. The finding is merely one of law and properly construed it is correct. An obstruction in a highway that would otherwise constitute a nuisance may be authorized by the legislature; but, of course, the party creating it would have no right to maintain it as against the owner of the soil of the highway. Yet the maintenance of the obstruction would be properly characterized as lawful, that is to say, as having the authority of law and as not being a nuisance. It is further contended that for the plaintiff to succeed, the statute authorizing this improvement must be held unconstitutional and that as no question of its constitutionality was raised in the trial court none can be raised here. The statute is not unconstitutional and no decision to that effect is necessary to secure the plaintiff's rights. If an act were passed by the legislature authorizing a corporation to construct a bridge across the Hudson river above Waterford, it would be unconstitutional because the Constitution prohibits the enactment of a special law for such purpose. If, however, the act authorized the construction of a bridge at the Highlands (the Constitution permitting special acts for bridges over the Hudson river below Waterford) it would not be rendered unconstitutional by the fact that the company did not own a rood of ground in either of the counties which border on the river at that point. The statute would simply be inoperative until the company acquired the necessary land.

As this is a dissenting opinion, I do not deem it necessary to discuss the extent of the right acquired by the defendant through private grant. It is sufficient to say that it is not greater than that carefully examined and considered in the *Lewis* case, and that it is of the same general character. If my difference with the majority of the court related merely

to that subject I should be content to confine myself to the record of my vote. It is against what I consider the broad and far-reaching doctrine of the prevailing opinion that I feel constrained to express the reasons for my dissent.

MARTIN, J., in memorandum concurs with O'BRIEN, J.; PARKER, Ch. J., and LANDON, J., concur with O'BRIEN and MARTIN, JJ.; BARTLETT and VANN, JJ., concur with CULLEN, J.

Judgment reversed, etc.