no part of her duty, but that it was his business to put the machines together after they had been cleaned. This witness also testified that for the purpose of washing the outside of the machine it was not necessary to place the screw or pin in position, and that he never put his hand in the hopper while readjusting the various parts of the machine. It seems, however, that the plaintiff, after replacing the screw, attempted to pull it out, and, finding that it did not yield readily to her exertions, put her left hand into the hopper to push it out, when, as she says, "the machine started to run," and her fingers were caught. There seems to be no question but that the belt was upon the loose pulley while the plaintiff was engaged in cleaning the machine; but the plaintiff insists that the screw did not revolve until she attempted to push it out in the manner above indicated, and the witness Smith testified that when he came to the plaintiff's assistance he found the belt running upon both pulleys, meaning doubtless that it was partly upon the tight pulley. We therefore have this condition of affairs established by evidence which is practically uncontroverted: The plaintiff was engaged in the performance of work which was not within the line of her duty, in attempting to accomplish which she placed her hand in the hopper of the machine, knowing that if the belt which was then upon the loose pulley should shift itself onto the tight pulley, as it had frequently done before, the screw or knife would revolve with sufficient force and rapidity to cause the injury of which she complains. She testified, it is true, that she had never known the belt to thus shift when the machine was apart, but this circumstance does not, in our opinion, relieve her from the charge of contributory negligence; for, although some parts of the machine had not been replaced, the screw was in its proper position, and she would have us understand that it was because of the force she exerted in her attempt to push it out of position that it was set in motion. We do not quite perceive the reason for this contention, but, in any view that may be taken of the case, it is difficult to resist the conclusion that the plaintiff's injuries were due quite as much to her own negligence as to that of the defendant's; and, such being the case, it follows, of course, that she cannot recover. Schultz v. Rohe, 149 N. Y. 132, 43 N. E. 420; Hartwig v. Leather Co., 118 N. Y. 664, 23 N. E. 24.

Judgment affirmed, with costs. All concur.

---

(74 App. Div. 434.)

DOLAN et al. v. NEW YORK & H. R. CO. et al.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1. APPEAL—CONSTITUTIONALITY OF STATUTE—OBJECTION BELOW.
    Though the record on an appeal from a judgment for plaintiff does not show that the constitutionality of a statute requiring a railroad to elevate its tracks was raised below, it may be raised by plaintiff on appeal in answer to the claim that defendant is entitled to its protection.

2. RAILROADS—ELEVATION OF TRACKS—OPTIONAL STATION HOUSE—RIGHTS OF ABUTTING OWNER.
    Laws 1892, c. 339, requiring the elevation of the tracks of the New York & Harlem Railroad, can only be invoked as a protection for those

¶ 2. See Eminent Domain, vol. 18, Cent. Dig. § 311.

things which it commands shall be done, and, where an abutting property owner suffered special injury by the erection of a station house made optional by section 7, he can recover damages therefor.

Van Brunt, P. J., dissenting.

Appeal from special term, New York county.

Action by Nora Dolan and others against the New York & Harlem Railroad Company and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, O'BRIEN, and INGRAHAM, JJ.

Ira A. Place, for appellants.

Thomas P. Wickes, for respondents.

HATCH, J. The action is an abutter's attempt to enforce what he has from time to time been permitted to think was his legal right in the public thoroughfare upon which his property fronted. Since the decision, however, in the case of Fries v. Railroad Co., 169 N. Y. 270, 62 N. E. 358, and the former decision of Lewis v. Same, 162 N. Y. 202, 56 N. E. 540, it is quite difficult to understand just what the rule of law is which we are required to apply in the disposition of this case. I understand that the court of appeals in the first of these cases has denied the legal right of the plaintiff therein to recover damages for the maintenance of the structure which was therein the subject of complaint, and the operation of the railroad thereon. As these plaintiffs are abutting owners upon the same street, and are affected by the same structure, it may be that their rights are concluded by the reasoning upon which the judgment proceeded in that case. But in the second case I understand that the court has authorized a recovery by an abutting owner for damages sustained arising from the same structure, and operation in the same street, and has in terms asserted that the abutting owner's property rights of light, air, and access were invaded thereby; for which injury his right to compensation was constitutionally guarantied. It is needless for us to add that these decisions have bred somewhat of confusion.

The law governing this general subject, as I understand it, is found expressed in several decisions. In Forbes v. Railroad Co., 121 N. Y. 505, 24 N. E. 919, 8 L. R. A. 453, it was decided that a duly incorporated railroad company, having the chartered power of the state to lay its tracks, and operate and maintain its railroad, when constructed, through and upon the surface of a street the title to which was in the municipality, and having license from such local authority to lay its tracks upon the streets, and operate its railroad thereon, takes no property of an abutting owner upon the street, whose title only extends to the exterior line thereof. This doctrine has been applied to surface street railroads. But in all cases where the right of the railroad to use the street without making compensation to abutting owners has been exercised, the courts have been careful to place limitations thereon which would in all cases practically protect the right of the public therein, and give to an abutting owner suffering special

damage his right of action to recover therefor. In De Grauw v. Railway Co., 43 App. Div. 502, 60 N. Y. Supp. 163, it was said:

"But the law is—and the courts may be relied upon to enforce the law—that the right of use of the street by the public is first and primary; the right of use by the street surface railroad is secondary and subordinate. * * * We have at all times been mindful of these conditions, and, when upholding the rights of the railroads in a given case, we have been careful to place a limitation thereon, and have uniformly asserted that whatever be the character of operation by the railroad, and whatever use it sought to make of the street, such use is subject to the authority of the public therein, and the public authority may, whenever necessary for the preservation of the street for street purposes, regulate and restrain the use thereof by the railroad."

This language received the sanction of the court of appeals, as that court affirmed the case on appeal upon the opinion of the court below. 163 N. Y. 597, 57 N. E. 1108. And prior to that time the court of appeals and the supreme court had in principle recognized and enforced the same rule. Ingersoll v. Railroad Co., 157 N. Y. 453, 52 N. E. 545, 43 L. R. A. 236; Roddy v. Railroad Co., 32 App. Div. 311, 52 N. Y. Supp. 1025. It seems clear, therefore, that the law is settled that steam surface railroads and street surface railroads hold their chartered rights subject to the primary right of the public in the street and its use, and that an abutting owner suffering special damage by reason of an excessive and unreasonable use of such street has a right of action to recover for the damage he sustains thereby. If, however, a railroad company, with precisely similar authority, both state and local, erects an elevated structure in the street, and operates its road thereon, and such structure and operation interfere with the easement of light, air, and access of an abutting owner, a different and more stringent rule prevails; such owner, even though he does not own the fee of the street, has the legal right to restrain the maintenance of the structure, and the operation of the railroad thereon, or, in the alternative, have a recovery of such damages as the owner has sustained as adjudged by the court. Story v. Railroad Co., 90 N. Y. 123, 43 Am. Rep. 146. Throughout the immense volume of litigation which followed this decision, the legal right announced therein has been sustained and upheld. If the reasoning of the opinions upon which the judgments in the several cases were predicated has not at all times been consistent, yet it has never been denied the right to equitable relief where damages have been sustained. This rule was applied in the case of a steam surface railroad which was required by the state engineer to carry the railroad over the Erie Canal at a given height, and compliance therewith required the railroad to build a viaduct in the street for that purpose. Therein the court of appeals held that the doctrine of the Story Case applied, and that an abutting owner was entitled to recover damages for an invasion of his property right in the easements affected thereby. Reining v. Railroad Co., 128 N. Y. 157, 28 N. E. 640, 14 L. R. A. 133.

Four rules seem to be settled by these authorities, however conflicting they may seem to be. First. Surface railroads are not liable

77 N.Y.S.—52

to abutting owners who do not own the fee of the streets in which they are operated, and may not be proceeded against in any form unless the use be excessive and unreasonable. Second. If the railroad be first constructed and operated upon an elevated structure, and the maintenance and operation invade the property rights of an abutting owner, whereby he suffers damage, an action lies to restrain such use until in some form the property right be acquired and paid for. Third. The last-mentioned rule obtains (Reining Case) where the authority of the state is exercised through state officers acting in obedience to law, as in the case where the condition required was to cross the Erie Canal at a given height, compliance with which required the elevation of the tracks upon an embankment constructed in the street. Fourth. But if the railroad be first constructed upon the surface of the street, or in a cut depressed below the surface (Fries Case), and by the command of the state such railroad be required to construct a viaduct in the street, and operate its trains thereon, it is relieved from all liability to the abutting owners or the public, even though property rights be invaded, on account of the structure or its methods of use.

It is said in the Fries Case that the corporation was bound to comply with the mandate of the state or forfeit its life, and in yielding obedience to such mandate it was not at fault if it committed a trespass or invaded the property right of an individual, and, as it was commanded to do the act by supreme authority, the property right of the citizen must yield thereto. If this be the law, then the state can command this railroad to construct an elevated structure, to be built in this street, which will take the whole, from door to door, of the abutting owner upon either side, and the latter be left remediless so long as no land of the abutter is taken. It must follow that, if a part may be thus taken without compensation, then the whole may be; there can be no middle ground in such a case. We had supposed that, when the state laid the command upon the railroad to do the specified act, it did not thereby authorize the property right of a citizen to be appropriated without compensation, but that, as it had invested such company with the power of eminent domain, it thereby assumed that the railroad company would obey its mandate, and at the same time respect the rights of the owners of private property, by making compensation in the manner provided by law for such property and rights as might be taken in complying with the command of the statute. Ordinary rules of construction would seem to indicate that such legislation should put the burden on the railroad company, and not on the private citizen; that the requirement was made subject to the legal duties of the corporation; and that the legislature did not intend to grant to a corporation, by such act, a charter to confiscate the property of the abutting owner. In the Reining Case, the state authority required that the defendants' road should be constructed in a particular manner, but it was not thought that this authorized an invasion of private property, even though the railroad obeyed the command of the state in what it did. If such is to be the construction of the act under which this work was performed, I am unable to see why it does not infringe the

provisions of the constitution, which provides that private property shall not be taken for a public purpose without compensation.

In the Fries Case it was said that, as the constitutional point was not raised below, it could not be considered in that court; and that in fact the respondent stood squarely upon the statute, as he pleaded it as a part of his cause of action. In the present case there is no such plea, and the point is raised in this court. Whether the respondent raised the question upon the trial does not and would not appear, as judgment passed in her favor. She raises the point here in answer to the claim that the defendant is entitled to the protection of the statute. It is therefore properly presented. If the judgment had been for the appellant at the trial, it would have been essential for the plaintiff to have presented such question in order that it might be available. Such was the case in Dodge v. Cornelius, 168 N. Y. 242, 61 N. E. 244; as therein the defendant was defeated at the trial, and sought to present the constitutional question for the first time in the court of appeals. It would seem, however, that the statute—the subject of construction ·in the Fries Case—was constitutional, as it does not in terms assume to authorize the taking of private property for a public purpose without compensation, and therefore it can easily be construed as commanding·that the act be done pursuant to law, and the organic law protects the property right of the individual in such a case.

The present record presents an essentially different question from that which appeared in the Fries Case. The damages in this case flow from the station house, and the operation of trains thereat, which the defendant has erected opposite the plaintiff's premises. There was no command in the statute which compelled the erection of the station house; for, by section 7 of chapter 339 of the Laws of 1892, the erection of the station house was optional with the defendant. It is evident that special damage was suffered by the plaintiff on account of this erection, as a large number of trains stopped thereat, and in stopping and starting emitted increased volumes of smoke, steam, cinders, and gases. The statute can only be invoked as a protection for those things which it commands shall be done, and if the railroad does other things not commanded, and thereby property rights are invaded, a right of action accrues, no matter what the construction of the statute be, as to those things which the statute commands. Certainly, the rule which condemns private property for a public use without compensation ought not to receive a very liberal construction, nor should the rule be extended beyond the strict letter of the statute. No matter in which way we view these cases, it is evident that satisfactory disposition has not yet been made of the questions which the cases in various forms present. It cannot, be said that the Fries Case has settled a hard and fast rule, in view of the fact that the Lewis Case and the Reining Case are yet regarded as law, and the court declined expressly to overrule them. Until the rule of law to be applied in the disposition of these cases shall be decisively determined upon all of the questions involved in this class of actions, I am not willing, by my vote, to announce a rule the result of which, I am convinced, is to authorize the taking

of private property for a public use without compensation being made therefor. I concur in the opinion written by Mr. Justice O'Brien, handed down herewith (Pape v. Railroad Co. [Sup.] 77 N. Y. Supp. 725), and with the reasons which he assigns in support of the right of the plaintiff therein to recover.

It follows that the judgment should be affirmed, with costs.

All concur, except VAN BRUNT, P. J., who dissents.

VAN BRUNT, P. J. I dissent from the conclusion arrived at in this case, upon the ground that the railroad company had acquired a right to the use of a portion of the street for railroad purposes, and as they have only exercised that right—it is true in a different manner from that in which they had theretofore used it, but for the same purposes—I am unable to see that any right of the abutting owner has been infringed upon, or how he has suffered any damages. He acquired his title to the premises claimed to have been injured, subject to this right of the railroad company, and has no ground of complaint because the railroad company have exercised their rights, although moved thereto by the act of the legislature.