will rarely issue where another sufficient and adequate remedy exists, but it does not result therefrom that the writ will not be issued in an appropriate case. In the cases in which the writ has been refused because of a void assessment, it has appeared that the assessing officers were totally without power to act, and their proceedings were nullities, as in the case of People v. Supervisors of Queens Co., 1 Hill, 196, or where the whole assessment roll was absolutely void, as in People v. Parker, 117 N. Y. 86, 22 N. E. 752. In the case now before us, the assessment was made by properly constituted legal authorities. The assessment was illegal because the relator was not subject to assessment for the purposes of taxation, or to taxation, in the city and county of New York. In that sense, the assessment against it was void, and it was illegal in consequence. There is nothing in section 250, nor in any other provisions of the general tax law, which would limit the effect of the word "illegal," as applied to an assessment such as that against this relator, and in none of the cases that have been cited or examined has it been declared as an absolute rule that in no case of a void assessment will a writ of certiorari be allowed. The furthest the courts have gone is to say that a writ of certiorari will seldom be allowed to review a void assessment. As the only question argued here is one of the jurisdiction of the court to issue this writ, we only pass upon that question, and hold that the court below was right in refusing to quash it on the ground upon which the motion was made, and the only one now insisted upon by the appellants.

The order appealed from must be affirmed, with $10 costs and disbursements. All concur.

---

### BIRRELL v. NEW YORK & H. R. CO. et al.

(Supreme Court, Appellate Division, First Department. June 9, 1899.)

1. EMINENT DOMAIN—RAILROADS—ELEVATED STRUCTURE IN STREET—CONDEMNATION PROCEEDINGS—DAMAGES.

    Where a railroad company by condemnation proceedings acquires title to a strip of land in the center of a street, it can, when authorized by the legislature, erect an elevated structure on such strip, and operate its road thereon, without incurring any liability to an abutting owner for the deprivation of light, air, and access caused thereby.

2. SAME—OPENING STREET.

    Where a railroad company has by condemnation proceedings acquired title to a strip of land, it is not deprived of its right, when authorized by the legislature, of erecting an elevated structure thereon, without compensation to an abutter, by the city's acquiring title to such strip under street-opening proceedings, for which it pays a nominal consideration.

3. SAME—EXTENDING STRUCTURE.

    Where a railroad company having the right to erect an elevated structure on a strip of land in the center of a street erects such a structure extending beyond such strip on either side, such structure and the operation of the road thereon beyond such strip are an additional burden, and the company is liable to an abutting owner for damages to that extent.

Appeal from special term, New York county.

Action by Alice I. Birrell against the New York & Harlem Railroad Company and another. From a judgment for plaintiff, defendants appeal. Reversed.

This action was brought for an injunction against the maintenance and oper-ation of the defendants' railroad structure on Park avenue, in the city of New York, in front of the plaintiff's premises, and to recover damages for such maintenance and operation. Park avenue was laid out as Fourth avenue upon the map filed in 1811 by the commissioners appointed under chapter 115 of the Laws of 1807. The defendant the New York & Harlem Railroad Company was incorporated, under chapter 263 of the Laws of 1831, with power to construct tracks on Park avenue, subject to the approval of the common council of the city of New York. By an ordinance of said city approved by the mayor in Decem-ber, 1831, the company was permitted to construct its tracks on Park avenue, not exceeding 24 feet in width. The title to the land in front of the premises in suit—on the northeast corner of Park avenue and 123d street—was vested in one Samson Adolphus Benson, an infant. After the passage of the resolution referred to, proceedings were duly taken by the company to acquire title from said Benson to a strip of land 24 feet in width in the center of said avenue, and extending for a considerable distance north and south of the premises in suit. These proceedings resulted in a final order entered in December, 1832, granting to the company full title to the land in question, with the right to "enter upon, take, and use the same for the purposes of said road." The plaintiff also ac-quired her title to the premises in suit from Benson. In 1850 the city of New York began a proceeding to open Park avenue from 38th to 135th street. By this proceeding the city assumed to acquire, for street purposes, title to a strip of land 140 feet in width in the bed of Park avenue, including the strip of 24 feet in question, and paid to the company the sum of one dollar for a strip of this width extending nearly from 123d to 124th street, and in front of the plain-tiff's premises. By chapter 702 of the Laws of 1872, the Harlem Company was authorized to lay two additional tracks, and was directed to sink its tracks in certain places. In pursuance thereof it constructed the additional tracks, and operated its road in a cut in front of the plaintiff's premises. In 1873 it leased its road to the defendant the New York Central & Hudson River Railroad Com-pany. By chapter 339 of the Laws of 1892, the defendants were required to raise these tracks, and thereupon built the viaduct structure which is complained of in this action. The trial judge found that the defendants acquired the right to operate their trains in the depressed cut constructed under the act of 1872, but that they had not acquired, as against the plaintiff, the right to maintain the present structure, or any part thereof, or to operate trains thereon.

Argued before BARRETT, RUMSEY, McLAUGHLIN, and INGRA-HAM, JJ.

Ira A. Place, for appellants.

Henry G. Atwater, for respondent.

BARRETT, J. This case differs from Conabeer v. Railroad Co., 156 N. Y. 474, 51 N. E. 402, only in the fact that the defendants' title to the strip of 24 feet through the center of Fourth avenue was ac-quired by proceedings in invitum. In the Conabeer Case there was a grant. Here the strip was acquired by condemnation proceedings. By these proceedings the Harlem Railroad Company acquired this strip in fee simple, with the right to enter upon, take, and use the same for the purposes of its road. There is no substantial difference in the rights thus acquired and those acquired by a direct grant. So far as the strip of 24 feet is concerned, we think it clear that the com-pany acquired the right to construct its railroad thereon at any grade authorized by the legislature, whether below or above the surface of the land, without incurring any liability to Benson or his grantees for consequential damages to Benson's remaining property, occasioned by the proper use and operation of the road. For the whole fee, with the railroad rights thus acquired, Benson received due compensation,

and thereupon he was devested of all reversionary or other interest in the land. Heath v. Barmore, 50 N. Y. 302. Neither he nor his grantees can complain of the authorized use of the lands thus acquired. The structure erected by the Harlem Railroad Company upon this strip in 1833 was a lawful one. So was the depression of the tracks thereon under legislative direction in 1872, and so was the elevation of these tracks thereon under similar direction in 1892. It is contended that the defendants lost those broad, general rights by the street-opening proceedings instituted by the city in 1850 and consummated in 1853. We think the Conabeer Case is an answer to this contention as well. It was there held that while, under these street-opening proceedings, the city obtained the naked fee to the strip of 24 feet there in question, yet the defendant's right to maintain and operate its road was not intended to be affected. The award to the company for this naked fee was but nominal. "At that time, however," said Judge Martin, "the municipal authorities and the legislature recognized the right of the railroad company to continue its road in the street, and in no way disturbed its possession or the exercise of that right." It is true that stress was also laid upon the company's acquisition of the property by grant, Judge Martin observing that:

"Whatever rights the city may have acquired, it is quite evident that, so far as Mrs. McGown was concerned, the right which she had granted to the railroad company never revested in her, and consequently neither she nor her grantees can assert the right thus released."

As we have already pointed out, there is no distinction in principle upon this head between the acquisition of the land and the railroad right by grant and their acquisition by condemnation proceedings. The effect of the grant in the Conabeer Case was not placed upon any covenant contained in the conveyance, but upon the naked act of transfer. These street-opening proceedings took from the railroad company none of its railroad rights. They took from it the bare fee of the land, which thereby became vested in the city in trust for use as a public street, subject to those railroad rights; and these latter have ever since been fully recognized both by the municipality and the legislature. It follows that the defendants by the street-opening proceedings in question have lost none of their railroad rights flowing from the original acquisition of the fee, nor have Benson's grantees thereby acquired any new rights, as against the railroad company, with regard to his remaining property. The action cannot, therefore, be maintained so far as it relates to the alleged deprivation of light, air, and access caused by the operation of the defendants' road upon the viaduct erected upon the strip of 24 feet. We think, however, that the structure which the defendants have erected upon each side of this strip, and the operation of their road thereon, are an additional burden upon the street, and that they unlawfully deprive the plaintiff of her easements of light and air, if not of access, appurtenant to her abutting property. The difficulty at this point is that the learned trial judge awarded rental damages, and estimated the impairment of the fee value, upon the basis of the illegality of the entire structure, including that part of it erected upon the strip

of 24 feet. He should have confined his award and estimate to the impairment of the plaintiff's easements caused by the maintenance and operation of the defendants' road upon that part of the viaduct which extends beyond this strip of 24 feet. It may be difficult to furnish the necessary proof to justify an award of rental damage and an estimate of the impairment of fee value upon this basis; but with that we have nothing to do. If there has been no substantial impairment of the easements of light and air (there certainly has been none of the easement of access), apart from the maintenance and operation of the road upon the 24 feet, the plaintiff must fail. To maintain her action she is bound to show some additional burden caused by the maintenance and operation of the road upon the exterior lines; and her rental damages and estimated impairment of fee value must be based upon proof relating exclusively to the operation of the road upon those exterior lines.

The judgment must therefore be reversed, and a new trial granted, with costs to the appellants to abide the event.

RUMSEY and McLAUGHLIN, JJ., concur.

INGRAHAM, J. I concur in result, as controlled by Welde v. This Defendant, 28 App. Div. 379, 51 N. Y. Supp. 290.