42 N. E. 986, 32 L. R. A. 367), or under the general rule of law, is not to be fixed upon the defendant, for the plaintiff himself is primarily responsible for the accident. Here we find the plaintiff cognizant of peril to which he might be exposed, performing an act which he was under no obligation to do, and which it was not within his duty to perform, and which he was not directed nor in any sense compelled to perform. He was working, not by day's wages, but his pay was regulated by the quantity of work turned out by the machines, and, in his evident anxiety to increase his earnings, he applied to the foreman to put on the belt so that the machine might be set working. He applied to the person whose duty it was to put on that belt, and, when that person refused, the plaintiff was not directed or required to put it on himself. He was simply left the choice of doing it himself or letting it remain undone. All the evidence points unmistakably to the conclusion that this unfortunate plaintiff assumed an obvious risk of his own volition, and the case is thus brought within the rule announced in Crown v. Orr, 140 N. Y. 450, 35 N. E. 648; Knisley v. Pratt, 148 N. Y. 372, 42 N. E. 986, 32 L. R. A. 367; White v. Lithographing Co., 131 N. Y. 631, 30 N. E. 236; Hickey v. Taaffe, 105 N. Y. 26, 12 N. E. 286; De Young v. Irving, 5 App. Div. 499, 38 N. Y. Supp. 1089. There was nothing that could have been properly left to the jury on the evidence introduced by the plaintiff, and in this view of the case it becomes unnecessary to consider other questions that have been argued.

The judgment and order appealed from must be affirmed, with costs. All concur, except McLAUGHLIN and HATCH, JJ., who dissent.

---

SIEGEL v. NEW YORK & H. R. CO. et al.

(Supreme Court, Appellate Division, First Department. June 21, 1901.)

1. EMINENT DOMAIN—AWARDS—ELEVATED STRUCTURE IN STREET—UNAUTHOR-
   IZED STRUCTURE—DAMAGES.
   Where a railroad company, having the right to erect an elevated structure on a strip of land in the center of a street, erects such structure, extending beyond such strip on either side, the entire structure is unlawful, and abutting property owners are entitled to rental and fee damages for the trespass, without any deduction for the portion which could have been lawfully erected.

2. SAME—INJUNCTION.
   Where a railroad company, having the right to erect an elevated structure on a strip of land in the center of a street, erects such a structure extending beyond such strip on either side, the entire structure is unlawful, and its continuance may be enjoined, unless the reasonable damages awarded the abutting property owners are paid.
   McLaughlin, J., dissenting.

Appeal from special term, New York county.

Action by Anna Siegel against the New York & Harlem Railroad Company and another. From a judgment for plaintiff, defendants appeal. Affirmed.

The plaintiff, as the owner of premises on the southeast corner of 129th street and Park avenue, brings this action for an injunction restraining the

defendants from maintaining or using the elevated viaduct structure in Park avenue in front of her property, and requiring them to remove the same, or to pay to her such sum as the court shall find to be the value of the easements of which she claims she is deprived by the structure and the operation of trains thereon. Upon the trial it was "conceded that the time of changing the trains from the old cut to the new structure was February 16, 1897," and that prior to that date the plaintiff is not entitled to any damages. The essential parts of the decision upon which the judgment rests, and which it is necessary to consider, are the following: "Third. The defendant the New York & Harlem Railroad Company is, and during all times hereinafter mentioned was, the owner of the railroad and railroad structures in Park avenue in front of the plaintiff's premises; and the defendant the New York Central & Hudson River Railroad Company is the lessee of said railroad and structures, under a lease dated April 1, 1873, for a term of 401 years from said date. Said railroad prior to February 16, 1897, was operated along the center of said Park avenue, in front of the plaintiff's premises, in a depressed cut, about 14 feet below the surface of said Park avenue, and 61 feet and 8 inches wide, which said railroad cut was bounded on each side by parapet walls of about 2 feet 6 inches above the surface of said avenue, which said embankment or viaduct cut off access from one side of the said avenue to the other, except at the intersection of 128th and 129th streets, at which point there were bridges for vehicles and foot passengers across the said railroad cut. Fourth. That the said defendant railroad companies, under and by virtue of the charter of the defendant the New York & Harlem Railroad Company, and the acts amendatory thereof and supplemental thereto; the various resolutions, consents, ordinances, and acts of the mayor, aldermen, and commonalty of the city of New York; the deed of Charles Henry Hall to the New York & Harlem Railroad Company dated January 18, 1832; the proceedings taken by the mayor, aldermen, and commonalty of the city of New York, commenced in 1850 and consummated in 1853; the various acts of the legislature upon which said proceedings were taken to open 4th avenue (now Park avenue) from 38th street to 135th street (chapter 702 of the Laws of 1872), and the acts performed by the defendants thereunder; the lease of the New York & Harlem Railroad Company to the New York Central & Hudson River Railroad Company, dated April 1, 1873; and all acts of acceptance, user, and occupation on the part of the defendant railroad companies; and the lapse of time; and the acquiescence of the plaintiff or her predecessors in title,—acquired the right, without liability to the plaintiff, to have, maintain, and use their railroad and railroad structures as the same were maintained and used prior to February 16, 1897, as hereinbefore described, and at any height within the central 24 feet of said Park avenue. Fifth. That subsequent to the passage of chapter 339 of the Laws of 1892 there was commenced within the lines of Park avenue, and in the center thereof, the construction of a new viaduct, of iron and steel; said structure being about 20 feet high above the surface of Park avenue, and about 59 feet wide. Said work was done under the supervision of the board for the Park avenue improvement above 106th street, and the said structure was completed and accepted by the defendant the New York Central & Hudson River Railroad Company on February 16, 1897. That neither of the defendants is liable for any fee or rental damage which may have been sustained prior to February 16, 1897. That said permanent structure, and the operation of trains thereon, are, and since February 16, 1897, have been, a continuous trespass upon plaintiff's easements of light and air appurtenant to her said premises, and solely in consequence of said trespass, and, aside from any other causes, the rental value of said premises was depreciated from the said date down to April 2, 1900, the date of trial, in the sum of $775 below what said rental would have been during said period if there had been no change in defendants' said railroad in Park avenue in front of said premises pursuant to chapter 339 of the Laws of 1892; and the fee value of said premises, had been, and was on April 2, 1900, depreciated in the sum of $2,000 below what said fee value would have been on said date if there had been no change in defendants' railroad as aforesaid. That said sums awarded as damages are

70 N.Y.S.—69

over and above any and all benefits conferred upon said premises by the changes made pursuant to chapter 339 of the Laws of 1892, which said benefits resulted in part from improved access to said premises afforded by said changes, and in a great measure effect the damages to said premises caused by said changes. The said sums awarded as damages are exclusive of any damages that would have been occasioned to the plaintiff's premises by the maintenance and user of the defendants' railroad and structures had there been no change in the same pursuant to chapter 339 of the Laws of 1892, for which last-mentioned damages, if any, the defendants are not responsible, either jointly or severally." The court therefore awarded against the defendants upon its decision the sum of $775 rental damages and $2,000 fee damages, and directed judgment for an injunction unless the award were paid, from which judgment the defendants appeal.

Argued before HATCH, McLAUGHLIN, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

Ira A. Place, for appellants.
Joseph A. Flannery, for respondent.

O'BRIEN, J.   Upon the question of the title to the land of the parties, respectively, the only feature which distinguishes this case from many of the former cases (see Birrell v. Railroad Co., 41 App. Div. 506, 58 N. Y. Supp. 650; Conabeer v. Railroad Co., 156 N. Y. 474, 51 N. E. 402) is that here the deed to the defendants with respect to the 24 feet in the center of the avenue antedates the deed to the plaintiff; the common source of title of both parties being one Charles Henry Hall. It is unnecessary to discuss the legal effect of this difference, no serious complaint arising but that it was duly considered by the learned trial judge. And equally upon the question of the amount awarded for damages, which was moderate and amply supported by evidence, nothing is required but a consideration of the appellants' contention that the rule which was applied deprived them of the benefit of certain deductions to which, upon the decision as made, they claim they were entitled.   The learned trial judge found that the defendants could rightfully maintain their railroad structure as it was maintained and used prior to February 16, 1897, and at any height within the lines of the central 24 feet of the avenue.   Assuming, as we must, without deciding, that this finding is right, we have to consider the contention that the judge "erred, in that, instead of finding and awarding as rental and fee damages the depreciation of rental and fee value, respectively, below what they would have been if defendants had maintained and operated trains upon such structure or structures as they had acquired the right to thus maintain and use, he found and awarded as rental and fee damages the depreciation of rental and fee values, respectively, below what they would have been 'if there had been no change in defendants' said railroad in Park avenue in front of said premises pursuant to chapter 339 of the Laws of 1892.'"   The contention, differently stated, is that as the court found:   First, that the defendants, having acquired the right, could build their structure at any height on the 24 feet in the center of the avenue; and, secondly, that the defendants acquired the right prior to 1897 to maintain the railroad as it then existed in the depressed cut in the ave-

nue, which was greater in width than the 24 feet,—it follows that they had the right to construct and maintain the present viaduct structure without responding to plaintiff in damages, at least for that part of the avenue used by them which was within the 24 feet.

The error which we think lies at the basis of this argument is that the damage sought by the plaintiff was not for structure so placed, but was for the new viaduct of iron and steel, about 20 feet above the surface of Park avenue, and about 59 feet wide, which structure, the learned trial judge found, was illegal, and caused fee and rental damage to the plaintiff in the sums awarded, for which judgment was directed, with the provision that unless the amounts were paid the illegal structure should be removed. The defendants, as stated, insist that this judgment is illogical and erroneous, because, as they claim, the extent to which the judgment could go affects only so much of the structure as projects on both sides beyond the 24 feet, or all the damages that could be awarded result therefrom. In other words, in every computation of the amounts to be awarded the 24 feet should be excluded. This contention we think is unsound. The structure is an entire one, and it would be difficult, if not impossible, to separate the legal from the illegal part. Instances may be imagined where this could be done, as where a third track is added to an elevated railroad structure, which could be removed if unauthorized, just as it was added, without destroying the rest of the structure, which the owners had the right legally to maintain, or, if allowed to remain, the difference in damage between the structure as it existed with the two tracks, and with the third track added, could be determined. In the present case, however, we have an entirely different structure, at a different elevation, affecting the abutting property differently, and one in which the legal and illegal portions are integral parts, and that which is illegal could not be removed without destroying the viaduct as an entirety. Moreover, considering the injury inflicted upon abutting owners, it might well be, in regard to such a structure, that, had it been limited to 24 feet in width, no appreciable damage might have resulted. Here the evidence shows that damage was caused by the placing of this particular structure in the avenue, and the fact that part of it was erected without warrant makes it, as a whole, illegal. It may not be difficult, in the abstract, to theorize as to how much less the plaintiff is damaged by the entire structure because of the defendants' right to use 24 feet thereof in the center of the avenue. Thus, if the injury to her property were in exact ratio to the number of feet in the width of the viaduct, the arithmetical computation of damages would be simply one of proportion, and she should be awarded such part of the whole damage as 24 feet bears to 59 feet. The injustice of any such method, however, we have already alluded to, in suggesting that a viaduct 24 feet wide might not have done any damage whatever to the abutting property, but that all the injury to the plaintiff's easements resulted from the structure as an entirety, occupying, with the portions added without authority, a large part of the avenue. If, instead of taking up 59 feet, the defendants had appropriated the entire avenue, so

as to practically destroy all of plaintiff's easements and property, then more apparently would it be difficult, if not impossible, to compute to what extent the damage inflicted would be lessened if, instead of such a structure, there were one occupying but 24 feet in the center of the avenue. In our opinion, there is little practical advantage in discussing what would or might be the effect on plaintiff's property of a viaduct 24 feet wide, for none such has been built; nor in endeavoring to imagine how much of the damage resulting from the present structure is caused by the part placed within the 24 feet. We say there is little practical advantage, in view of the permanent structure which has been built, which is being used, and which, as a whole, affects abutting property; for, in considering the subject, even from the standpoint that the defendants, without liability to any one, might or could have built a viaduct of any kind 24 feet wide in the center of the avenue, we must recognize that here it is an actual situation, a present permanent structure, and not a theory as to what might or could be done, that claims our attention. Dealing, therefore, with this subject in the concrete, and bearing in mind the character of actual structure which now exists, we can find no legal support for the contention that the defendants are entitled to a deduction either from the fee or the rental damage because of their alleged right to maintain some structure within the line of the 24-foot strip. What has been held to be illegal is the structure as it now exists in its entirety, and it is that which has injured the plaintiff's easements and property, and there is no rule of law to which our attention has been called that requires a court to apportion damages for the benefit of a trespasser. On the contrary, the tendency has been in the opposite direction. Lahr v. Railway Co., 104 N. Y. 268, 10 N. E. 528; American Bank-Note Co. v. New York El. R. Co., 129 N. Y. 267, 29 N. E. 302. In the Lahr Case, supra, the court said:

"No partial justification of the damages inflicted by an unlawful structure, and its unlawful use, can be predicated upon the circumstance that under other conditions, and through a lawful exercise of authority, some of the consequences complained of might have been produced without rendering their perpetrator liable for damages. The structure here, and its intended use, cannot be separated and dissected; and it must be regarded in its entirety, in considering the effect which it produces upon the property of the abutter. However the damage may be inflicted, provided it be effected by an unlawful use of the street, it constitutes a trespass rendering the wrongdoer liable for the consequences of his acts."

We think, therefore, as in effect did the learned trial judge, that where there is but one entire structure, part of which is illegal and not separable, this latter, to those whose property is injured, makes the whole illegal. The plaintiff's evidence was directed (as defendants contend, improperly, but, as we think, properly) to showing the difference in effect between the former cut, as it existed, with its tracks and the trains operated thereon, which the defendants had the right to maintain and use, and the present permanent structure, which, in its entirety and as used, constitutes a continuous trespass upon the plaintiff's easements of light, air, and access, and which structure it was in the power of the court to enjoin unless

the reasonable award made should, in compensation for the damages suffered, be paid.

We think the judgment was right, and should be affirmed, with costs.

INGRAHAM, HATCH, and LAUGHLIN, JJ., concur.

McLAUGHLIN, J. (dissenting). The defendants had a right to erect a steel viaduct 24 feet wide in the center of Park avenue, at any height they saw fit. That they had such right was settled and determined by this court in Birrell against these same defendants (41 App. Div. 506, 58 N. Y. Supp. 650). They also had acquired by prescription the right to occupy so much of the avenue outside of the 24-foot strip for railroad purposes as they had used for that purpose from 1873 to February 16, 1897. This was settled and determined by the court of appeals in Conabeer against these same defendants (156 N. Y. 474, 51 N. E. 402), and in Lewis against these same defendants (162 N. Y. 202, 56 N. E. 540). The learned trial court also found as a fact that the defendants had such right, as appears from the following findings:

"Third. * * * Said railroad prior to February 16, 1897, was operated along the center of said Park avenue in front of plaintiff's premises in a depressed cut, about 14 feet below the surface of said Park avenue, and 61 feet and 8 inches wide, which said railroad cut was bounded on each side by parapet walls of about 2 feet 6 inches above the surface of said avenue, which said embankment or viaduct cut off access from one side of the said avenue to the other. * * * Fourth. That the said railroad companies * * * acquired the right, without liability to the plaintiff, to have, maintain, and use their railroad and railroad structure as the same were maintained and used prior to February 16, 1897, as hereinbefore described, and at any height within the central 24 feet of said Park avenue."

But, notwithstanding these findings and the authorities referred to, the learned trial court held that the structure and the operation of trains thereon since February 16, 1897, have been "continuous trespass upon plaintiff's easements of light and air appurtenant to her said premises," and for which fee and rental damages were awarded. This court is about to affirm the judgment, upon the theory that "the structure is an entire one, and it would be difficult, if not impossible, to separate the legal from the illegal part," and that, inasmuch as a portion of it is illegal, the entire structure becomes illegal, and must be removed. I am unable to agree to this conclusion. It is a novel proposition to me that a party who has a legal right to build or maintain a structure upon his own land, or in a given locality, must tear down the entire building or remove the entire structure if a portion of the building or a part of the structure happens to be constructed upon his neighbor's land, or in such a way as to impair his neighbor's easements of light, air, and access. I do not see how such a principle can be applied, if justice is to be meted out to parties according to their respective legal rights. It is no answer to the suggestion to say that "it would be difficult, if not impossible, to separate the legal from the illegal part." Difficulties and impossibilities are unknown to the law. Those terms are only applicable when legal principles are sought to

be applied, but the principle is not destroyed even if the application and the enforcement of it be difficult or impossible. Here it does not appear but what that portion of the steel viaduct outside of the 24 feet can be removed, and leave the balance standing; and, if it did, it would not make the slightest difference in determining or enforcing the rights of the parties. If A. constructed a building partly on his land and partly on the land of B., no one would seriously contend that, in ordering A. to remove that portion of it which encroached upon B.'s land, the court should order A. to tear down the entire building, on the theory that "the structure is an entire one." I can see no difference in principle between a building thus constructed and the structure of the defendants. The defendants had the legal right to build a part of the structure in precisely the way they built it. This we have decided. And, having that right, I do not see how they can be directed to take that part of it down, or to pay damages in lieu thereof. I think the damages to which the plaintiff is entitled by reason of the erection of the structure of which she now complains is the value of her easements of light, air, and access which have been impaired or of which she has been deprived by that part of the structure placed or erected upon the portion of the avenue lying outside of the 24-foot strip, and this only to the extent that the use to which the avenue has been put by the erection of the steel viaduct thereon is in excess of or different from that to which it was subjected and used by defendants for railroad purposes from 1873 to 1897. This is not the rule adopted by the trial court. The trial court directed that the entire structure be taken down, or, in lieu thereof, a specified sum in damages be paid.

For the foregoing reasons, I am unable to concur with the other members of the court. I think the judgment should be reversed, and a new trial ordered, with costs to the appellants to abide the event.