is, a prior one to their title; and, inasmuch as the commissioners represented the state in acquiring the title to such lands, the state now holds such title subject to such lien.

These conclusions require that the determination of the commissioners of the lar 1 office be reversed, with $50 costs and disbursements. All concur.

(74 App. Div. 175.)

PAPE et al. v. NEW YORK & H. R. CO. et al.

(Supreme Court, Appellate Division, First Department. July 8, 1902.)

1 RAILROADS—CONSTRUCTION AND MAINTENANCE—RIGHTS OF ABUTTING OWNERS —PRIORITY OF GRANTS—INJUNCTION—DAMAGES.

Where a railroad company acquires by grant the right to construct its road in a street subsequently to the grant from the original source of title to the city or the abutting owner, the abutting owner is entitled to an injunction and damages; but, where the company's grant is prior to that of the abutting owner and the city, the abutting owner is not entitled to such remedies.

2. SAME—SCOPE OF GRANT.

A grant to a railroad company of a strip of land 24 feet wide in the center of land afterwards occupied by a city street, with power to slope the embankments and excavations of the proposed road so far beyond the lines of the strip granted as may be necessary to support its work, is not broad enough to authorize such company, as against subsequent abutting owners, to erect a viaduct which would interfere with such owners' light, air, and access.

3. SAME—ADVERSE POSSESSSION—RIGHTS ACQUIRED BY RAILROAD—RIGHTS ACQUIRED BY ABUTTING OWNER.

Where a railroad company acquires by adverse possession, as against abutting owners, the right to use a street to a certain extent, the abutting property owners, who have for the same period enjoyed easements in the street not interfered with during such period by the company's user, likewise acquire by adverse possession, as against the company, a right to the undisturbed enjoyment of such easements.

4. SAME—LEGISLATIVE AUTHORITY TO ERECT STRUCTURES—EFFECT ON ABUTTING OWNER'S RIGHTS.

Where the legislature authorizes a railroad company to erect structures in a public street, which, as against the rights of the abutting owners, it had no right to erect, such structures constitute a trespass on the easements of the abutting property owners, in so far as they interfere therewith.

5. SAME—VIADUCT—CONSTRUCTION PARTLY A TRESPASS AND PARTLY NOT—ABUTTING OWNER'S RIGHTS—INJUNCTION—EXTENT.

Where a railroad company, having the right to maintain a viaduct on a strip of land of a certain width in the center of a street, extends the width of such viaduct so as to cover portions of the street to which such right does not attach, the right of an abutting property owner to an injunction compelling the removal of the structure does not extend to that portion thereof within the strip.

6. SAME—VIADUCT—PARTLY TRESPASS AND PARTLY NOT—DAMAGES.

Where a railroad company having the right to erect a viaduct on a strip of land in the center of a street extends such structure beyond the lines of such strip on the sides thereof, the court is not required to exclude from its computation of the damages of an abutting property owner that part of the structure within such strip.

7. SAME—APPEAL—ERROR AS TO EXTENT OF INJUNCTION—DISPOSITION—MODIFICATION WITHOUT REMAND.

Where the trial court, in computing the damages to abutting property resulting from an unauthorized extension in width of an elevated structure maintained by a railroad company in the street, erroneously re-

stricted the extent of the defendant's right to use the street, and, in determining to what extent defendant should be enjoined, included a portion of the street which it had a right to use, the appellate court would modify such decision by limiting the injunction to that part of the street wrongfully appropriated, and by making a reasonable deduction from the damages allowed, and, as so modified, would affirm it. ·

Van Brunt, P. J., dissenting.     McLaughlin, J., dissenting in part.

Appeal from special term, New York county.

Action by William Pape and another against the New York & Harlem Railroad Company and others. From a judgment in favor of plaintiffs, defendants appeal. Modified and affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Ira A. Place, for appellants.

Thomas P. Wickes, for respondents.

O'BRIEN, J. The action is one brought to enjoin the operation of the defendants' railroad upon the viaduct structure in Park avenue, and to recover damages alleged to have resulted therefrom to the plaintiffs' premises, which are known as No. 1812 Park avenue, located between 124th and 125th streets. The plaintiffs' title is derived from Isaac Adriance, and the same deed under which they claim was discussed in Welde v. Railroad Co., 28 App. Div. 379, 51 N. Y. Supp. 290; Id., 168 N. Y. 597, 61 N. E. 554; and, as the leading facts relating to the property were carefully set forth in the opinions therein, they need not be here restated. Upon the evidence presented, the learned judge at special term granted an injunction and awarded fee and rental damages as against the defendants, and from the judgment so entered they appeal.

The learned counsel for the appellants seeks on this appeal to open up the entire subject of the railroad's liability for the damage resulting to property by reason of the construction of the viaduct and the operation of trains thereon in Fourth or Park avenue. This, together with the questions propounded, but not answered by the court of appeals in its opinion in the most recent of these cases (Welde v. Railroad Co., 168 N. Y. 597, 61 N. E. 554), to which we have referred as being analogous to the present suit, makes it proper that we should refer to the cases already decided, and restate the principles which we think bear upon the questions at issue, and remove, if we can, what is claimed to be an inconsistency in some of the decisions.

At the outset it is important to recall the exact facts and the precise questions which in each particular case were under discussion, because these necessarily have led the courts, in determining the rights which abutting owners had as against the railroad, to reach different conclusions; and upon this the claim of inconsistency will have mainly to rest. Thus in Lewis v. Railroad Co., 162 N. Y. 202, 56 N. E. 540, Benson, the original owner of a tract of land between 107th and 115th streets, prior to the railroad obtaining its charter in 1831, or completing its road in 1837, had conveyed to the city in 1825 the fee of the avenue for street purposes. It was held that the railroad company could not assert absolute title to the site of

the viaduct as against an abutting owner who had acquired a lot upon the avenue through mesne conveyances from the common grantor prior to a grant made by him in 1832 to the railroad company, in an action brought by such owner to enjoin, as an interference with the appurtenant easements of light, air, and access, the operation of the railroad, and for damages, since the original entry by the railroad and its occupation must be "deemed to have been made under and in subordination to the legal title" of the city. See, also, Fries v. Railroad Co., 57 App. Div. 577, 68 N. Y. Supp. 670; Sander v. Same, 58 App. Div. 622, 69 N. Y. Supp. 155. In Conabeer v. Same, 156 N. Y. 474, 51 N. E. 402, Mrs. McGowan, who owned property on the avenue between 97th and 106th streets, was the common source of title of both the plaintiffs' and the defendants' land; and, prior to her transfer of the premises owned by Conabeer, she had conveyed, on January 18, 1832, to the railroad company, the right to build its road upon a strip of land in the center of the avenue, 24 feet wide. It was accordingly held in that case that where a railroad is built in a public street or highway after the public rights and private property, if any, in the highway or soil have been acquired, the railroad company is not responsible for any consequential damages to private property necessarily resulting from the construction and operation of its road. Important facts, therefore, to be considered in determining the rights of an abutting owner to recover the resultant damages suffered by injury to easements, are whether the railroad claims the right to maintain its viaduct as now constructed by grant or by prescription; and, if by grant, then the extent thereof, and whether obtained prior to or after the grant from the original source of title to the city or the abutting owner, are equally important considerations, giving to the abutting owner in the latter case, as in the Lewis Case, the right to an injunction and damages, and in the former, as in the Conabeer Case, no such right. As to the rule when the claim is by prescription, see Birrell v. Railroad Co., 41 App. Div. 506, 58 N. Y. Supp. 650.

Differing in some features both from the Lewis and from the Conabeer Cases is the Welde Case, supra, which, as we have stated, is on all fours with the present suit, involving precisely the same questions, based upon similar facts, so that both are necessarily controlled by the same principles. And as we have already said, it was stated in the opinion of the court of appeals in the Welde Case that the record there suggested questions, the answers to which, we assume, in the mind of the learned judge writing the opinion, would be determinative of the rights of the parties. In deference, therefore, to what we regard as an intimation from that court that these questions should be examined, we will take them up in order, and endeavor to answer them. The first is:

"Did the Adriance deed, before referred to, operate as a consent by the plaintiff's predecessor in title to the maintenance and operation of the railroad in front of his premises in this street, covering a space not to exceed 100 feet wide?"

This court, in construing the Adriance grant, said (Welde v. Railroad Co., 28 App. Div. 387, 51 N. Y. Supp. 295):

"He conveyed to the railroad [a strip of land] twenty-four feet in width along the center of the avenue, to construct their railroad and for any other purpose, with the power of sloping their embankments or excavations so much further beyond the lines of said premises as might be necessary to support their work; not, however, extending beyond the width of the avenue. * * * The deed from Adriance undoubtedly gave to the railroad company, as far as he was concerned, the right, if it should be necessary, to lay the tracks in a cut, to dig an excavation through the street of such a width as might be necessary to enable the companies to lay their tracks, and to build such an embankment as might be necessary for the same purpose, and to occupy for that purpose the whole width of the street, if it should be necessary to do so. But the embankment of the excavation, however much it might interfere with the use of the street by Adriance, would certainly not interfere with his light or air, as would a viaduct structure such as has been constructed along that street. It is quite clear, therefore, that by the terms of the deed no viaduct was intended nor could be constructed. It is not necessary for us to say at this time what rights are given to the railroad company, as against these abutters, by the terms of Adriance's deed. All that we need to say here is that the deed is not broad enough to cover the erection of a viaduct such as this."

Apart, however, from this construction of the terms of the grant, we think there is another reason which is controlling against the right of the railroad to maintain the present viaduct structure. It will be recalled that Fourth avenue, except to the extent that it was actually used by the railroad, was laid out as a public street, and used as such, and that, with that end in view, the city went so far in the proceedings as to obtain against the railroad company the naked fee to the land actually occupied by the railroad; reserving, however, to the latter the right to maintain its tracks and structures as then placed upon the avenue. In 1872, with the consent of the city, the railroad company, at this part of the avenue we are considering, widened its roadbed so as to have four tracks, and placed them in a depressed cut; and, as thus enlarged, it was in the actual occupation of about 62 feet in the center of the avenue, with streets on each side, affording light, air, and access to the abutting property. So far, therefore, as open, notorious possession of the avenue was concerned, it appears that from 1873 to 1894 the railroad was in possession of about 62 feet thereof; the public having the use for street purposes of the space on either side, and the abutting property owners having the easements mentioned. In referring to this condition of the avenue as it existed after 1873, this court, in speaking of the rights acquired by the railroad as against the abutting owners, said in the Taylor Case, 27 App. Div. 196, 50 N. Y. Supp. 702:

"The occupation of the railroad company for this period of more than twenty years was under claim of right, and was certainly notorious and exclusive of the right of any other person in that portion of the highway which it then occupied, and was authorized by law. As to that embankment, it has acquired by adverse possession the right to maintain it to the extent to which it was used during that time, but it is limited in this user to the right as exercised for that period of time."

In that case the city had acquired the deed first, and the rights of the railroad, therefore, as said in the Lewis Case, were "subordinate to the legal title of the city"; but it was nevertheless held that, as against the city and abutting owners, the railroad company by adverse possession had obtained rights in the avenue to the extent

and in the manner it had used it. We do not see why, with equal force, the same rule should not apply in determining the rights of the city and the abutting owners to the remainder of the avenue, which after 1873 was used for street purposes. In other words, if the railroad company could obtain rights by adverse possession to the extent that it had used the avenue, what different considerations apply to deprive the abutting owners of their rights in and to the rest of the avenue, which for the same period they had used for street purposes, and as a means of obtaining light, air, and access to their premises? As showing the intention to claim in hostility to the railroad company, we have the proceeding taken by the city after the avenue was laid out to its full width in 1837, and its subsequent use, including its maintenance and regulation for street purposes. And have we not the right to assume that some part of the expense for grading, regulating, paving, and maintaining it was borne by the abutting property owners? This use of the sides of the avenue as a public street was certainly as notorious and as exclusive, and it existed during the same period, as the occupation by the railroad of the center of the avenue. If, therefore, by actual possession, the railroad, against all others, obtained the right to continue its occupation of the avenue to the extent it had used it from 1873 to 1894, we do not see why the city and the abutting owners did not acquire rights by adverse possession as against the railroad. It is a bad rule that will not work both ways. As said in Taylor v. Railroad Co., 27 App. Div. 194, 50 N. Y. Supp. 700:

"It is well settled in this state that the abutter upon a public street is entitled to the unobstructed use of the street as it was accustomed to be used, and to such easements of light and air as would naturally come to the premises which he owns from the street as it was originally opened and used. Story v. Railroad Co., 90 N. Y. 122, 43 Am. Rep. 146; Lahr v. Railroad Co., 104 N. Y. 278, 10 N. E. 528."

A distinction is to be noted between public and private rights. No question, however, is here presented as to the former, and it is unnecessary to discuss or decide the rights of the city. So, also, with respect to the rights of the railroad company, it is unnecessary to determine whether or not the viaduct is an illegal or unauthorized structure; for even if we concurred with the appellants that, under the various acts of the legislature, it was legal and authorized, we must still determine whether it was a trespass upon the easements of light, air, and access which the abutting owners had in and over a public street. As said by Judge Peckham in White v. Railway Co., 139 N. Y. 19, 34 N. E. 887:

"The easements of abutting owners in New York City, who are without title to any portion of the streets upon which their lands abut, differ somewhat in their origin from ordinary easements. They have not been created by grant or covenant, but it is said of them that it is easier to realize their existence than to trace their origin; that they arise from the situation, the course of legislation, the trust created by statute, the acting upon the faith of public pledges and upon a contract between the public and the property owner, implied from all the circumstances, that the street shall be kept open as a public street, and shall not be devoted to other and inconsistent uses."

In the case at bar the railroad is claiming under a grant which is prior in point of time to that of the city or of the property owner,

and we have not overlooked what was said in the Conabeer Case, supra, that:

"Where one acquires a title by deed, it will not be affected by nonuser unless there is a loss of title in some of the ways recognized by law. Mere nonuser, however long continued, does not create an abandonment."

This, however, as we view the subject, does not militate against our conclusion that even though the railroad, under its grant, claimed 100 feet of the avenue, it has lost all but the 62 feet which it used, not because it failed to use it, but because there has been, as suggested in the opinion, "a loss of title in some of the ways recognized by law, one of which, as we have endeavored to point out, is by adverse possession."

The second question suggested by the court of appeals in the Welde Case is, "Does the present viaduct structure, so far as it occupies this 100-foot space, constitute any trespass or invasion of the plaintiff's property rights, and, if so, to what extent?" The discussion already had affords, we think, an answer to this question; our conclusion being that to the extent that the present structure occupies more of the avenue than the previous roadbed, and imposes additional burdens thereon, it does constitute a trespass and an invasion of the plaintiffs' property rights.

And in regard to the third question, "In view of the grant from the plaintiff's predecessor in title already referred to, and the acts of the legislature above mentioned, is this viaduct structure upon which the railroad is operated rightfully and lawfully in the street?" our answer must be in the affirmative; for while it was proper for the legislature to authorize additional burdens to be placed upon the street, and therefore the action taken by the railroad under such legislative sanction was neither unlawful nor unauthorized, and strictly speaking, therefore, was not illegal, still it may, as held in the Elevated Railroad Cases, be a trespass upon the easements of abutting property owners.

From what has already been said, it would follow as to the fourth and fifth questions—as to whether, with reference to the present structure, the plaintiffs could maintain an action "to enjoin the operation of the railroad or to recover damages against the defendants"—that our answers would also be in the affirmative. Upon the subject which these last two questions involve,—the extent of the relief that can be properly awarded,—this court is committed to the view that the injunction itself could not be extended so as to require the removal of any portion of the viaduct structure within that portion of the avenue occupied by the railroad since 1873. This rule was stated by this court in Larney v. Railroad Co., 62 App. Div. 313, 71 N. Y. Supp. 27. And upon the question of the measure of damages we held in Siegel v. Same, 62 App. Div. 290, 70 N. Y. Supp. 1088, that as the structure was entire, and the part that had been constructed over the 24-foot strip to which the defendants had title could not be separated from the remainder of the viaduct, the court was not required, in its computation of the amount of damages, to exclude that part of the structure over the 24-foot strip. In the dissenting opinion in that case the learned judge discusses the question which was not considered by the majority of the court, as to the

extent of the provisions of the injunction; there being, however, no intention upon this subject to vary the rule stated in the Larney Case. In one the sole question was the measure of damages; in the other, the extent to which relief by injunction could be granted. Read in the light of this explanation, there is no inconsistency in the rules laid down by the court in the two cases.

In applying these rules to the facts here presented, it appears that the learned trial judge inadvertently fell into error, which, however, from a review of the record, can easily be corrected. The injunction granted prevents the defendants from operating the railroad in the avenue except to a width not exceeding 56 feet, thus ignoring the fact that the cut or depression as it existed in 1873 was bounded on either side by a sustaining wall and parapets of such thickness that the width of the ground actually occupied for railroad purposes was 61 feet and 8 inches. In that respect, therefore, the injunction should be modified. So, too, with respect to the fee damages, the same error crept in as to the extent to which the defendants could use the avenue; such use being restricted to 56 instead of 61 feet. Because of this error, and also in view of the testimony given upon the subject, we think that a fair amount of fee damage would be $2,000, instead of $2,350, awarded. The rental damages were fixed at $950, which we think, also, is a larger sum than the testimony warrants, and our conclusion is that these should be reduced to $800. The extra allowance should be reduced accordingly.

As modified in the respects indicated, the judgment appealed from should be affirmed, without costs.

This opinion was written before the case of Fries v. Railroad Co., 169 N. Y. 270, 62 N. E. 358, was decided by the court of appeals. The opinion in that case does not discuss the precise questions which are here presented; and as the court of appeals has held that each case is to be decided upon its own facts, and the view taken by this court upon the facts here appearing had not been passed upon by that court, it seemed proper not to alter our opinion herein, which accordingly is handed down as it was originally written. Mr. Justice HATCH, since the decision in the Fries Case, supra, has written in Dolan v. Railroad Co. (decided herewith) 77 N. Y. Supp. 815, an opinion analyzing and distinguishing it from that case; and, in addition to my own views, I concur in those expressed by him.

HATCH, J., concurs. VAN BRUNT, P. J., dissents.

INGRAHAM, J. I concur with Mr. Justice O'BRIEN'S opinion in this case, and with Mr. Justice HATCH'S opinion in Dolan v. Railroad Co. (decided herewith) 77 N. Y. Supp. 815; wishing, however, to call attention to the effect of the acquisition of the fee of 4th avenue by the city of New York under the right of eminent domain. Fourth avenue was originally laid out by the commissioners appointed under chapter 115 of the Laws of 1807. The New York & Harlem Railroad Company was incorporated by chapter 263 of the Laws of 1831, and was authorized to construct a railroad from any point on the north boundary of 23d street to the Harlem river, between Third and Eighth avenues. The railroad company was re-

quired to obtain the consent of the mayor, aldermen, and commonalty of the city of New York before operating its road upon any public street or highway in the city. In pursuance of this authority, the New York & Harlem Railroad Company located the center line of its road along the center line of the proposed 4th avenue from 23d street to the Harlem river, and filed a map showing the location of its line, to which the municipality consented. Fourth avenue being thus laid out as a public street, but not actually opened or the fee acquired, Isaac Adriance, who owned the fee of the strip of land laid out as 4th avenue between 124th street and 127th street, conveyed to the New York & Harlem Railroad Company a strip of land laid out on the map of the city of New York as 4th avenue, 24 feet in width, running through the center of the said avenue between the said streets, to have and to hold "for and during the full period of time during which the said parties of the second part may remain an incorporated company, and on which they are to construct their railroad, and for no other purpose, with the power of sloping their embankments or excavations so much further beyond the lines of said premises hereinbefore granted as may be necessary to support their work, not extending beyond the width of the avenue." The New York & Harlem Railroad Company constructed a railroad upon the surface of 4th avenue between those streets, using not over 24 feet in width, which was completed in 1836 or 1837, and using no portion of the remainder of the strip of land laid out as the avenue for embankments or excavations. Fourth avenue was subsequently widened to 140 feet, under chapter 274 of the Laws of 1837. This being the condition, the city of New York commenced proceedings in the year 1850 to acquire the fee of 4th avenue from 23d street to the Harlem river, under the provisions of chapter 86 of the Laws of 1813. That proceeding was regularly prosecuted by the mayor, aldermen, and commonalty of the city of New York. Commissioners were duly appointed, who made their report. In a map annexed to that report, showing the property taken in the proceeding, there is a strip of land in the center of 4th avenue 24 feet in width, and it is indicated upon the map as the property of the New York & Harlem Railroad Company. The commissioners awarded to the railroad company as the value of that strip of land the sum of $1, and made awards for other property acquired for the street. The railroad company appeared in that proceeding and filed objections to the report upon the ground that the commissioners "propose to take a strip of land twenty-four feet wide belonging to said company, and running through the center of said Fourth avenue from 38th street to 135th street, for a nominal consideration, whilst they have allowed full value of other adjoining parcels of land on each side of said strip to the owners thereof." The report of the commissioners, with this objection, came on for a hearing at the special term of the supreme court; and, after hearing counsel, the supreme court, by order entered on the 29th day of October, 1853, confirmed the report. From that confirmation an appeal was taken to the general term of the supreme court, which, by order entered on the 15th day of May, 1854, affirmed the order of the special term. By the final confirmation of this report, to

which the New York & Harlem Railroad Company was a party, the mayor, aldermen, and commonalty of the city of New York became seised in fee of all the lands, tenements, hereditaments, and premises in the said report mentioned that were required for the purpose of "opening the said public square or place, street or avenue, or part or section of a street or avenue so to be opened, or for the purpose of laying out and forming the said street or public place so to be laid out and formed,  *  *  *  the same to be appropriated, converted, and used to and for such said purpose accordingly, *  *  *  in trust nevertheless, that the same be appropriated and kept open for, or as part of a public street, avenue, square or place forever, in like manner as the other public streets, avenues, squares and places in the said city are, and of right ought to be." Under this act, the expense, including the award for property taken, was assessed upon the adjoining property as it was benefited by the opening of the proposed avenue. The railroad company, at the time that this proceeding was instituted, was operating a railroad upon the surface of 4th avenue; its right to operate that road having been acquired from the legislature and the consent of the city authorities.

We will assume that this proceeding did not devest the railroad company of its right to exercise the franchise granted to it by the state and consented to by the city, and that the fee acquired by the city of New York was subject to the exercise by the railroad company of this franchise. But certainly all interest in this land, whether held by Adriance or the railroad company, consisting of the fee or reversion or other interest in the land, upon the confirmation of this report, vested absolutely in the city of New York, in trust to maintain the same as a public street. After the confirmation of this report of the commissioners, the title of the railroad company acquired by virtue of the grant from Adriance vested in the city, and the city became the owner in fee of this whole strip of land, whether before owned by Adriance or by the railroad company. It was subject to the operation by the railroad company of its surface railroad, but, subject to that right, the fee vested in the city. The railroad company was a party to the proceeding, and was awarded by the commissioners what they considered to be the value of the property taken; and that award was confirmed by the court, notwithstanding the objection of the company. It would seem that after the final confirmation of the report of the commissioners the railroad company retained no interest in this property that it had acquired from Adriance, except the right to exercise its franchise by the operation of a railroad upon the surface of the street. What right, then, did the abutting owners acquire by the opening of this avenue? If by the opening of this avenue the abutting owners acquired a property interest in it, I assume that, under the constitution of this state, that property could not be taken from them without compensation, either by the state, a public corporation, or a private individual; and neither the state, nor a corporation exercising authority conferred upon it by the state, could any more take the property that the abutting owner had in 4th avenue, without compensation, than they could take the abutting property itself. No matter how much the state or a corporation wanted the property, no matter how insig-

nificant the value of the property, if it was property that belonged
to the abutting owners' no one could appropriate it without compensation. By section 6, art. 1, of the constitution, it is provided that
no person "shall be deprived of life, liberty or property without due
process of law; nor shall private property be taken for public use,
without just compensation." If, therefore, the right of the abutting
owners in 4th avenue, as appurtenant to the property, is to have
4th avenue "appropriated and kept open for, or as part of a public
street, avenue, square or place forever," then, if effect is to be given
to this plain mandate of the constitution, that property could neither
be taken by the state, by a corporation for public use, or for any
other use, without compensation. In enforcing this constitutional
mandate, the courts of this state have given to this provision the
broadest meaning, protecting the right of every individual, no matter how obscure or unimportant, in the enjoyment and possession
of his property, no matter of how little value.

In Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543,
the question was whether the legislature had power, under the constitution, to enact that, whenever land was exhibited upon a map
for street purposes at any time after the filing thereof, no compensation shall be made to the owner for any improvements put upon the
land during the time between the filing of the map and the condemnation proceeding, and the court said:

"Whenever a law deprives the owner of the beneficial use and free enjoyment of his property, or imposes restraints upon such use and enjoyment,
that materially affect its value, without legal process or compensation, it
deprives him of his property, within the meaning of the constitution. All
that is beneficial in property arises from its use and the fruits of that
use, and whatever deprives a person of them deprives him of all that is
desirable or valuable in the title and possession."

In Cromwell v. MacLean, 123 N. Y. 475, 25 N. E. 932, an act
which confirmed a sale of land for the nonpayment of taxes theretofore made, which sought to validate a sale made under a void assessment, was held unconstitutional and void. In Morgan v. King,
35 N. Y. 454, 91 Am. Dec. 58, it was held that a river not capable
in its natural state of being in use as a public highway could not
be made a public highway by improvement without providing compensation to those having rights in the stream. In People v. O'Brien,
111 N. Y. 40, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684, it
was held that a franchise granted to a street railroad is property,
which cannot be taken by the state without compensation. Many
other cases could be cited in which the courts have uniformly held
that any right or interest in specific real or personal property is protected by this provision of the constitution. It is sufficient to say
that this provision of the constitution "is to have a large and liberal interpretation, and that the fundamental principle of free government, expressed in these words, protects not only life, liberty, and
property, in a strict and technical sense, against unlawful invasion
by the government in the exertion of governmental power in any of
its departments, but also protects every essential incident to the enjoyment of those rights." People v. King, 110 N. Y. 423, 18 N. E.
246, 1 L. R. A. 293, 6 Am. St. Rep. 389.

The next question is, has an abutting owner in a street, the fee

of which has been acquired by the city under the act of 1813, a property interest in the street? That the abutting owner of a street, the fee of which had been acquired under this statute, has a property interest in the street, has been settled by a series of adjudications, in the New York Elevated Railroad Cases (Lahr v. Railroad Co., 104 N. Y. 287, 10 N. E. 528; White v. Railway Co., 139 N. Y. 19, 34 N. E. 887); and the principle established in those cases has been applied in all cases where the right of the state or corporations to use the streets has been questioned. In the late case of In re City of New York, 168 N. Y. 134, 61 N. E. 158, the principle is reasserted. It is there said:

"The Harlem river is no less a highway than any of the public streets of New York City. It is the settled law of this state that the owners of lands abutting upon such streets have easements therein which are property rights, and cannot be destroyed or abridged for a public use without compensation."

And in that case there is said what I think applies with great force to this case:

"Nor are we concerned with the extent of appellant's alleged loss. It is undoubtedly the fact that before the construction of this driveway the appellant's riparian rights were of a very limited character. * * * It may even be, as suggested, that the appellant's lands are more valuable now than they were before the construction of the 'speedway.' However that may be, the fact remains that the question whether the appellant has been injured by the taking of his riparian easements, and the extent of his injuries, if any, has never been passed upon. He was entitled to have that question decided, and the refusal of the commissioners to consider it was error, for which the order of the court below should be reversed."

In that case the street was built by a municipal corporation by direct mandate of the legislature, and there was no doubt expressed by the court of appeals but that such an appropriation was illegal unless paid for.

It being the settled law of this state that the appellants' right in this street is property, and that neither the legislature nor the railroad company, separately or combined, can take that property right in the street without compensation, the only remaining question that possibly can arise is whether such a right is taken. That such a right is taken is expressly found by the court below, and is not disputed upon this appeal. Indeed, it could not be, in view of the many decisions in the Elevated Railroad Cases upon this question. In the case of Fries v. Railroad Co., 169 N. Y. 270, 62 N. E. 358, however, it seems to have been held that because this structure was built by commissioners appointed by the legislature, and that since it was thus built the railroad company has used it under the direct authority of the legislature, the defendant was not guilty of a trespass; but, assuming that this was so,—that this defendant not having been concerned in the construction of this elevated railroad in the street, and that the state itself was the wrongdoer, in appropriating the plaintiff's property without his consent and without compensation,—is that any reason why, in an action brought by the person whose property has been appropriated by such a structure, he should not be entitled to have the structure removed, and his property restored to him in the condition it was before the illegal appropriation? That

is the relief that the plaintiffs ask in this case. That the railroad company would be a proper party to an action for that purpose must be conceded. There is no claim that there is a defect of parties defendant, in that others should be joined; and I had always supposed that where the state, through its officers or agents, has appropriated the property of an individual, that individual had a right of action against the agents who have appropriated his property, to recover possession of it, and that in such a case a court of equity, where the person despoiled of his property has no remedy at law, would interfere for his protection. The decision in the Fries Case seems to be based upon the fact that the plaintiff in that case had not attacked the constitutionality of the law providing for the erection of this structure without compensation, but, on the contrary, alleged it to be valid, and based its right to relief upon the law being a valid exercise of legislative authority. But in this case the complaint alleges that the acts and doings of the defendants in erecting and maintaining the said elevated railroad structure in front of the plaintiffs' premises, and in erecting the stations and platforms and the stairway, have been without right or authority, and without the consent of the plaintiffs, and that the defendants have obstructed and continue to obstruct the said street and sidewalk in front and adjacent to the plaintiffs' premises, and have entered upon and injured and destroyed the property of these plaintiffs, viz., their easement of the right of ingress and egress to and from said premises, and of unobstructed light and air to the same from, through, and over the said Park avenue, in front thereof and adjacent thereto, and have deprived the plaintiff thereof; and the relief asked for is that the defendants be enjoined and restrained from maintaining, continuing, or using the elevated railroad structure and its appurtenances in the complaint described, and the said station and station platform and appurtenances thereto. If this structure appropriates the plaintiffs' property without their consent or without compensation, it is, as to them, an illegal structure, whether authorized by the legislature or not; and, in an action brought against the person or corporation in possession of this structure, it would seem to follow that the plaintiffs are entitled to an injunction restraining its maintenance and use.

I feel that this question now presented is most serious, as for the first time an attempt is made to break down the constitutional prohibition that before has always been enforced against the right of these corporations to appropriate the property of the individual without his consent and without compensation.

McLAUGHLIN, J. (dissenting). I think this judgment should be reversed. The damages awarded include 62 feet of the street upon which the railroad company had at least the right to construct and operate its road at any height it saw fit, without incurring any liability whatever for damages to abutting owners. This seems to be conceded in the prevailing opinion, but it is there said the judgment can be affirmed by deducting a portion of the damages awarded. I do not think this can be done,—certainly not with any degree of accuracy; and for that reason the judgment should be reversed, and a new trial ordered.